BURNHAM, HANNA, MUNGER & COMPANY v. THE CITIZENS BANK OF EMPORIA.

1. CHATTEL MORTGAGE—*Notice.* The recording of a chattel mortgage does not impart constructive notice to prior mortgagees.

2. PRIORITIES—*Estoppel.* Where personal property which has been mortgaged by the owner to a creditor by an instrument valid as between the parties, but which, if properly attacked, might be avoided by other creditors or *bona fide* purchasers, is subsequently mortgaged to another creditor by an instrument in which the validity of the first mortgage is recognized, and such second mortgage is, in terms, subject thereto, the second mortgagee is estopped from questioning the validity of the prior mortgage.

3. SENIOR AND JUNIOR LIENHOLDERS—*Rule in Equity.* The general rule in equity is that a creditor who is secured by a mortgage or mortgages on several pieces of property, who has actual notice of a junior mortgage on only a portion of the property is bound to exhaust all his security for the satisfaction of his debt; and if he releases any part of his security, or pays to the mortgagor the proceeds derived from a sale of any portion thereof after actual notice of the rights of the junior lienholder, he does so at his peril and must account to the junior lienholder for any surplus realized, or which ought to have been realized from all of his securities. This rule is subject to qualifications and exceptions, and is not to be applied in such manner as to impose risks or burdens on the senior lienholder which he has not assumed.

4. RECITALS IN MORTGAGE—*Construction.* C., the owner of a stock of merchandise, mortgaged it to a bank to secure his indebtedness to it, with power to sell, and delivered possession of the

35—55 KAS.

property to the bank, reserving in the mortgage one-half the proceeds of sales to be made during the month of December. Afterward he executed a second mortgage to the plaintiffs with the following provision: "It is hereby represented, and this mortgage accepted on faith of said representation, that there are no claims, or liens of any kind on the above property, but this mortgage is a first lien, except a claim in the nature of a chattel mortgage held by the Citizens Bank of Emporia, Kas., and subject thereto." *Held:* (1) That such recital recognizes the validity of the mortgage to the bank, and estops the plaintiffs from attacking it; (2) that the plaintiffs by virtue of the second mortgage acquired the right reserved by C. to one-half the proceeds of the December sales.

*Error from Lyon District Court.*

BURNHAM, HANNA, MUNGER & COMPANY brought suit against the *Citizens Bank of Emporia*, Thomas Campbell and others, to obtain an accounting for the proceeds of certain property which had been disposed of by the bank under chattel mortgages from Thomas Campbell, the plaintiffs claiming a lien under a mortgage executed by Campbell to them. Kellogg & Sedgwick, Cahn, Wampold & Company, and Bohm Brothers & Company were also made defendants. The case was sent to a referee to take the testimony, and report on certain questions of fact. On the coming-in of the report of the referee, the court made findings of fact as follows:

"1. Prior to November 29, 1887, the defendant, Thomas Campbell, was the owner of a stock of goods and fixtures worth several thousand dollars. At that date he was insolvent.

"2. On November 29, 1887, he was indebted to the defendant, the Citizens Bank, in the sum of $5,698.18. To secure the payment of this debt he gave a chattel mortgage to said bank on his entire stock of goods and fixtures, and delivered the same to said bank. The bank immediately placed its agent, G. L. Brooks, who was a witness before the referee herein, in the actual possession of said stock of goods and fixtures, who

remained in possession thereof from the said 29th day of November, 1887, until December 18, 1888, engaged in selling the same at retail. By the conditions of said mortgage the bank was authorized to sell said goods either at public or private sale, as by it might be deemed most advantageous; and if sold at retail, it was authorized to use the proceeds, from time to time as might be necessary, to purchase staples with which to replenish the stock so as to facilitate the sale of the other goods. It was also stipulated in said mortgage that said Campbell should receive one-half of the proceeds of the first month's sales to be used in the payment of other of his debts. A copy of said mortgage is attached to the petition herein as exhibit 'B,' and is made a part hereof. Said mortgage was filed for record on December 2, 1887.

"3. On December 1, 1887, and while the defendant's said agent was in the possession of said store, the said Campbell gave a mortgage on the same stock of goods, not including the fixtures, to the plaintiffs to secure the sum of $888.93, which mortgage was filed for record December 3, 1887. A copy of said mortgage is attached to the petition herein as exhibit 'A,' and is made a part hereof.

"4. On January 9, 1888, said Campbell gave a mortgage on said stock of goods, not including the fixtures, to the defendants, Kellogg & Sedgwick, in trust, to secure the debts due from the said Campbell to the defendants, Cohn, Wampold & Co. and Bohm Bros. & Co., aggregating the sum of $1,933.46. Said mortgage was filed for record on the same day it was given. A copy of said mortgage is attached to the said defendants' answer herein as exhibit 'A,' and is made a part hereof.

"5. On January 20, 1888, said Campbell gave another mortgage to the defendant, the Citizens Bank, on all the notes and accounts then owned by him which were due and uncollected. Said mortgage was by its terms given to secure the sum of $1,700, and any and all indebtedness then existing between said Campbell and said bank, or that might thereafter arise between them. Said mortgage was filed

for record on the same day it was given. A copy thereof is attached to the petition herein as exhibit 'D,' and is made a part hereof.

"6. The bank received as the proceeds of the property covered by its two mortgages aforesaid the aggregate sum of $9,373.13. It received as the proceeds of the property covered by its first mortgage the aggregate sum of $6,332.26. Of this amount, it paid for staple goods put in the stock and for expenses in running the business the aggregate sum of $3,357.43. It received from all other sources the total sum of $3,040.87, in which amount is included cash which had been collected by it on notes and accounts after the date of the first mortgage, and before the date of the last one, which aggregates the sum of $1,092.39, which amount is included in the total of $9,373.13 set out in finding 6. The bank also paid out the following additional amounts for goods purchased by Campbell before November 29, 1887 : $850.94 for taxes and interest ; for Campbell the sum of $159.24 ; cash paid to Campbell, the sum of $989.57 — total, $1,999.75. The total amount of sales made during the month of December, 1887, was $1,448.06.

"7. The bank had no actual knowledge of the mortgage given to the plaintiffs until after the cash payments of $989.57 to Campbell had been made ; but the agent of the bank, Brooks, was present when the mortgage was executed, and was a witness thereto and knew the contents thereof.

"8. When this case was ready for trial, the parties by consent had six specific questions of fact sent to a referee who heard the evidence and found conclusions thereon, which evidence and conclusions of fact were returned into court, and no objections or exceptions being made to either, the case was submitted to the court upon said findings and evidence, all of which are referred to and made a part hereof.

"9. The plaintiffs and the defendants are each entitled to a personal judgment against the defendant, Campbell, as prayed for."

As a conclusion of law the court found that the

*Bank* was entitled to judgment for costs against the plaintiffs, and their codefendants.

*L. B. Kellogg,* and *T. N. Sedgwick,* for plaintiffs in error.

*E. W. Cunningham,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J. : It is contented that the provision in the mortgage from Campbell to the bank, allowing him to check out half the proceeds of the December sales, renders the whole mortgage void. We shall assume that, if attacked by a creditor who had done nothing to estop him, it would be void. The plaintiffs, however, claim under a mortgage which contains the following provision : " It is hereby represented, and this mortgage accepted on faith of said representation, that there are no claims or liens of any kind on the above property, but this mortgage is a first lien, except a claim in the nature of a chattel mortgage held by the Citizens Bank of Emporia, Kas., and sub-
2. Priorities— ject thereto." The plaintiffs, by accepting
   estoppel.
a mortgage containing this clause, recognized the validity of the mortgage to the bank, and are estopped from now questioning it. (Jones, Mortg., § 744.)

It is contended by the plaintiffs, however, that they must recover even if the validity of the bank's mortgage is conceded, because it appears from the findings of the court that the bank realized from the securities it held more than enough to pay all of Campbell's indebtedness to it, and actually paid over to him $1,999.75, out of which the plaintiff's claim should of right have been paid. The mortgage to the bank being a prior lien, it was not bound to account to the

plaintiffs for any surplus realized from a sale of the mortgaged property without express notice of the plaintiff's rights. The recording of plain-

1. Chattel mort-
gage—notice.

tiff's mortgage subsequent to that of the bank did not, under the authorities, impart constructive notice to the prior mortgagee. (1 Jones, Mortg., § 562; *McLean v. Lafayette Bank*, 4 McLean, 430; *Meacham v. Steele*, 93 Ill. 135; *Dewey v. Ingersoll*, 42 Mich. 17.) The findings of the court as to actual notice we think not in accordance with the evidence. The case comes to us just as it did to the trial court, on written evidence reported by the referee. Brooks, the agent of the bank, in charge of the stock of goods, testified that he knew of the mortgage to Burnham, Hanna, Munger & Co. at the time it was given; that he informed his principal that Campbell had given another mortgage on the stock of goods right away by writing; that he knew of the terms and conditions contained in the mortgage.

D. W. Eastman, the cashier of the bank, testified:

" Q. When did you first learn of the mortgage to Burnham, Hanna, Munger & Co.? A. I do not know; some time after it was given.

" Q. How long would you say after it was given? A. I do n't think we knew of it until one time Mr. Brooks came up here, some time after it was given."

This witness also testified that he had made search, and failed to find any letter informing them of the plaintiff's mortgage. This testimony we think fairly shows that the bank had actual notice of the plaintiff's mortgage while it still held securities sufficient to satisfy both its own claims mentioned in the findings of the court and that of the plaintiffs. The indebtedness due the bank was secured, not only by mortgage on the stock of goods prior to the plaintiff's mortgage

but also by a mortgage on the fixtures, notes and accounts which were not covered by the plaintiff's mortgage. The general rule enforced in equity is that, where one creditor is secured by mortgage on several pieces of property while another creditor is secured by a junior mortgage on only a part of the property, the prior creditor, when chargeable with actual notice of the rights of the junior creditor, is bound to exhaust his security on the property not covered by the junior lien, and that he must account to the junior lienholder if he releases his security on, or pays over to the mortgagor, the proceeds of the property not covered by the lien of the junior mortgagee after actual notice of the junior lien. ( 2 Jones, Mortg., §§ 1268 *et seq.*; 2 Pingrey, Mort., § 1929 ; *McLean v. Lafayette Bank*, supra.)

*3. Senior and junior lien-holders— rule in equity.*

Judging from the findings of the trial court alone, we should infer that the indebtedness of Campbell to the bank had been satisfied, and that a surplus remained of $1,999.75, which was paid over to Campbell, but in the evidence of Eastman we find a statement that Campbell was still indebted to the bank on account of debts of himself or of the firm of Campbell & Johnson, or Campbell & Bros, between $1,500 and $1,600. Whether these claims were otherwise secured does not appear. It would seem quite remarkable that the bank should pay over a portion of the proceeds of the mortgaged property to Campbell while a portion of its claim still remained unpaid; but if the indebtedness to the bank secured by its mortgages were sufficient to exhaust the entire proceeds of the mortgaged property, the plaintiffs could not complain of its doing so. The trial court held, not only that the provision in the mortgage for the payment to Campbell, the mortgagee, of one-half of the proceeds

of the December sales did not render the mortgage void, but that the acceptance by the plaintiffs of a mortgage recognizing the validity of the mortgage to the bank, recognized as well the provision for this payment to the mortgagor.     The mortgage to the plaintiffs in terms conveys to them all the interest Campbell had in the goods.    It represents "that there are no claims or liens of any kind on the above property, but this mortgage is a first lien, except a claim in the nature of a chattel mortgage held by the Citizens Bank of Emporia."    Can it be said that

**4. Recitals in mortgage—construction.** Campbell still reserved an interest in the goods altogether indefinite in amount, and on which Burnham, Hanna, Munger & Co. acquired no lien by virtue of their mortgage? The reservation in the mortgage to the bank of the proceeds to an amount not to exceed one-half the sales during the month of December, 1887, was to be used for the purpose of payments on his other indebtedness.  He was then indebted to the plaintiffs.  The amount of sales to be made in December was altogether indefinite, and depended entirely on the action of the bank.   It might be nothing, or it might be the whole stock.   Campbell had an undoubted right to mortgage every interest he had in the property not already conveyed to the bank, including as well as the proceeds of sales to be made in December as of those made at a later day.   There is no reservation to himself of any interest in the property by the terms of the mortgage to the plaintiffs, except the ultimate surplus after the payment both of the claims of the bank and the plaintiffs.   The bank was not bound to make any sales in December, but having done so, one-half of the proceeds inured to the benefit of the plaintiffs.

The judgment is reversed, and a new trial ordered between Burnham, Hanna, Munger & Co. and the Citizens Bank. We find no evidence that the Citizens Bank had actual notice of the mortgage to Kellogg & Sedgwick, and the judgment as to the other plaintiffs in error is affirmed.

JOHNSTON, J., concurring.

MARTIN, C. J. : I dissent from the last clause of the fourth point of the syllabus, and the corresponding part of the opinion. In all else I concur.