HARRIET A. GORE v. FRANK ROYSE *et al.*—G. C. HIXON & CO. v. HARRIET A. GORE *et al.*

Nos. 8398, 8398½.

1. MORTGAGE—*Release by Agent—Denial of Authority—Estoppel.* G. held a mortgage on city lots owned by R., and which were numbered 8 and 9. Lot 8 was improved, and worth nearly as much as the mortgage debt. R. began the construction of a house on lot 9, but had not paid for the lumber and material used therein, and, desiring to use that lot as security to obtain a further loan, he applied to G. to release the mortgage on lot 8 for that purpose, and she directed her agent to examine lot 9, and, if

he found it to be good security for the mortgage debt, to discharge the mortgage on lot 8. Upon examination, the agent deemed lot 9 to be sufficient security, and executed a release of the mortgage upon lot 8 upon the margin of the record, to which he signed his principal's name. B., who had agreed with R. to loan him money on the security of lot 8 if the mortgage was released, upon being informed that the release had been executed, made the loan, taking a mortgage upon the lot. Some months afterward, and in a foreclosure proceeding, G. denied that her agent was duly authorized to execute the release. *Held*, Under the circumstances, that G. is estopped from questioning the authority of her agent, or from denying that the release is effectual.

2. MECHANICS' LIENS — *Mortgage Released — Marshaling Securities*. Those who furnished lumber and material for the improvements on lot 9 had a lien claim upon the lot when the mortgage was released which was subsequently perfected. G. had knowledge of the improvements and that there were unsatisfied claims for the material used in making them. Under the doctrine of marshaling securities, she must be held to have made the release at a sacrifice of her own security, and not of the existing equities of those who had furnished the material and made the improvements. The lien claimants are entitled to occupy the position they would have held if no release had been made.

*Error from Atchison District Court.*

ALL the material facts are stated in the opinion herein, filed May 9, 1896.

*W. L. Bailey*, and *J. T. Allensworth*, for plaintiff in error Harriet A. Gore.

*Charles J. Conlon*, for plaintiffs in error G. C. Hixon & Co.

*P. Hayes*, for defendant in error Martin Baker.

The opinion of the court was delivered by

JOHNSTON, J: In 1885 Frank Royse borrowed from Harriet A. Gore the sum of $2,500, and to secure the payment of the same he and his wife executed to her a mortgage upon lots 8 and 9, in block 96, in the city of Atchison. There were a house and other improve-

ments on lot 8, but lot 9 was vacant and unimproved until 1889. In March, 1889, Royse began the erection of a house on lot 9, and obtained material for that purpose of the value of $776.72 from G. C. Hixon & Co. Royse did not pay for the material when it was purchased, and had not sufficient funds to complete the house, and in July, 1889, he undertook to borrow a further sum of money. He notified Harriet A. Gore, who held the mortgage on both lots, that he had erected a new two-story house on lot 9, which he claimed was good security for the amount owing to her, and he requested her to release lot 8 from the lien of her mortgage so that he might use it as security to obtain a further loan. She sent her son, Charles J. Gore, who attended to business of this character for her, with authority, oral and by letter, to release lot 8 from the lien of the mortgage if, in his judgment, he found lot 9 with the improvements thereon was sufficient security for her debt. In the meantime Royse had spoken to J. H. Talbott to obtain a loan of $1,800 on lot 8, providing it could be released from the Gore mortgage, and Talbott learning that Martin Baker had money to loan suggested a loan upon this property, and Baker told Talbott that if the lot was released from the lien of the Gore mortgage Royse could obtain the money by securing him with a mortgage on lot 8. On July 10, 1889, Charles J. Gore examined the house erected on lot 9, and, upon determining it to be sufficient security, he went to the office of the register of deeds, and on the margin of the record where the Gore mortgage was recorded the following release was written, to which he signed his mother's name :

" This mortgage upon lot 8, block 96, old Atchison, herein described, is released, so as to make a mortgage this day executed by Frank Royse and wife to Martin

Baker for the sum of $1,800 the first and prior lien thereon, the mortgage to H. A. Gore remaining a second-mortgage lien upon said lot.—July 10, 1889.—H. A. GORE.

"Attest: D. J. CLIFFORD, per J. I. N., *Deputy*."

Talbott at once reported to Martin Baker that the Gore mortgage had been released or postponed, and he at once paid the sum of $1,800 to Royse, who with his wife executed and delivered to him a first mortgage upon lot 8, which was duly recorded. The interest due upon the Gore loan was paid when due until 1889, after which default was made, and Harriet A. Gore brought this action to recover the amount of her debt, and also to foreclose the mortgage upon both lots which were originally included in her mortgage. Martin Baker, who held the mortgage on lot 8, was made a party defendant, also G. C. Hixon & Co., who had furnished material for the house erected on lot 9. Baker answered, claiming a first lien upon lot 8, and G. C. Hixon & Co. set up their claim, and asked that it be declared a first lien upon lot 9.

In addition to the facts stated, the trial court found from the testimony that Harriet A. Gore never signed and acknowledged any instrument in writing authorizing Charles J. Gore to release lot 8 from the lien of her mortgage; that after he had executed the release he reported to his mother what he had done in the matter, and that she made no objection to the release further than to say that she thought her security was diminished. She took no steps to rescind or set aside the release or to question it until the foreclosure proceeding was begun, on June 25, 1890. It was found that the lumber and material were furnished by Hixon & Co. between the 26th of March, 1889, and the 12th of October of the same year, and that the building was finally completed on November 10, 1889.

It further found, that in due time G. C. Hixon & Co. filed a statement for a lien in due form, the amount of the claim being $776.72. There was a finding that on March 26, 1889, lot 8, with the house upon it, was of the value of $2,500. Lot 9, at that time being vacant, was of the value of $1,000. On July 10, 1889, when the release was executed, lot 8 was of the value of $2,500, and lot 9 of the value of $2,500. Judgment was given in favor of Harriet A. Gore for the amount of her claim, and it was decreed to be a first lien upon lot 9, and a second lien upon lot 8, while the judgment awarded Martin Baker was decreed to be a first lien upon lot 8. It was further held, that G. C. Hixon & Co. were entitled to a second lien upon lot 9. Harriet A. Gore complains of the ruling making her lien upon lot 8 inferior to that of Martin Baker, while G. C. Hixon & Co. complain of the ruling making the lien of their judgment inferior and second to that of the Gore judgment. A case-made was prepared and served in behalf of both of the complaining parties, and separate petitions in error, under different titles and numbers, have been filed by them in this court. There was no necessity for separate titles and numbers, as there is in fact but a single proceeding here, and the rulings will be reviewed in a single opinion.

The point of contention between Gore and Baker is as to the effect of the release. A mortgage may be released by a marginal entry on the record duly signed, but it is contended that Charles J. Gore was not the agent of Harriet A. Gore in executing the release, and further, that it cannot be released by an agent unless a written appointment duly signed and acknowledged by the principal is a matter of record. In view of the facts of this case, we are not required to decide whether

the release was executed in strict compliance with law. Under the circumstances, Harriet A. Gore is estopped from questioning the authority of Charles J. Gore, or from denying that the release is effectual. Charles J. Gore had acted as the agent of his mother in collecting interest and in other matters pertaining to this loan. With a full knowledge of the facts in the case, she instructed him to release the mortgage upon lot 8, if he deemed the lien on lot 9 was sufficient security for the debt. Royse had asked for the release in order that he might use the lot to obtain a further loan of money. She left it entirely to the judgment of her son as to whether the release should be made. Baker loaned his money upon the faith of this release. Harriet A. Gore not only consented that the release should be made for this purpose, but she acquiesced in the action of her agent after he reported that the release had been executed. In a letter written to Royse several months afterward, she acknowledged that she had released the mortgage. By her own testimony, it appears that she expected that a portion of the money obtained upon the Baker mortgage would be used as a payment upon her claim. It is evident that she expected the loan to be made, and trusted Royse to make the promised payment. Her son, upon whose judgment she relied, frankly states that the release was executed upon written and oral authority which he received from his mother. In signing the release, he abbreviated his mother's Christian name, but that is of little consequence, since it appears that a letter of her own which she introduced in evidence was signed in the same manner. Under the circumstances, we think she cannot be heard to say that there was no authority for the execution of the release.

Baker was entitled to a prior lien upon lot 8, and therefore that part of the judgment of the trial court will be affirmed.

What are the rights of G. C. Hixon & Co.? They furnished lumber and material for the improvements that were made upon lot 9. Before the release was executed they had obtained an equity in the lot, and the agent of Harriet A. Gore had, under her direction, inspected the improvements that had been made. From some of the testimony in the case, it appears that she was aware of the fact that the claims for the improvements made had not been paid and satisfied. The mechanic's lien attached on March 26, 1889, and at that time lot 8 was of the value of $2,500, almost equal to the amount of the Gore lien. If no third party had intervened, G. C. Hixon & Co. would be entitled to have the securities marshaled, and to demand the sale of lot 8 to satisfy the mortgage lien of Harriet A. Gore before subjecting lot 9 or any part thereof to the satisfaction of her mortgage. The doctrine of marshaling securities applies in favor of mechanics-lien claimants as against mortgage creditors. In a recent case it was stated that

"the general rule in equity is that a creditor who is secured by a mortgage or mortgages on several pieces of property, who has actual notice of a junior mortgage on only a portion of the property, is bound to exhaust all his security for the satisfaction of his debt; and if he releases any part of his security, or pays to the mortgagor the proceeds derived from a sale of any portion thereof after actual notice of the rights of the junior lien-holder, he does so at his peril and must account to the junior lien-holder for any surplus realized or which ought to have been realized from all of his securities." (*Burnham v. Citizens Bank*, 55 Kan. 545.)

As Harriet A. Gore released the property knowing that the value of lot 9 had been largely enhanced by reason of the material furnished and the improvements made, she must be held to have made the release at a sacrifice of her own security, and not at a sacrifice of the existing equities of those who had furnished the material and made the improvements. They are entitled to occupy the position they would have held if no release had been made. As they could have compelled Harriet A. Gore to have resorted to the lien upon lot 8 in the first instance for satisfaction, the amount derived from the sale of that lot should be deducted from the amount of her claim or lien upon lot 9. They will, therefore, be entitled to the difference between the proceeds of the sale of both lots and the amount of the judgment of Harriet A. Gore. To this extent the judgment of the district court will be modified.

All the Justices concurring.