Spire v. Spire.

No. 21,801.

JOHN S. SPIRE, as Administrator, etc., *Appellee.* v. M. B. SPIRE et al., *Appellees,* and THE J. I. CASE THRESHING MACHINE COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Payment by Maker—Surety for Comaker—Subrogation.* The maker of a promissory note, in fact surety for his comaker, is not entitled, on paying the note, to be subrogated to chattel security held by the payee, to the prejudice of other liens on the chattel held by the payee to secure other obligations of the comaker.

Appeal from Chautauqua district court; ALLISON T. AYRES, judge. Opinion filed April 12, 1919. Reversed.

*S. H. Jones,* of Sedan, *J. S. Kirkpatrick, O. D. McCollum,* and *H. M. Kirkpatrick,* all of Kansas City, Mo., for the appellant.

*J. A. Ferrell,* of Sedan, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the administrator of the maker of two promissory notes, who was in fact surety for his comaker, for reimbursement, after payment of the notes, and for subrogation to chattel security held by the payee. The plaintiff recovered, and the payee, who held other liens on the chattels to secure other obligations of the comaker, appeals from the decree of subrogation.

The notes were the last of a series of five given to the machine company for the price of farm machinery, and were secured by mortgage on an engine which was part of the machinery sold. The notes were signed by Ambrose Spire as maker, who also signed the accepted order for the machinery and the mortgage. Ambrose Spire in fact lent his name to enable his son, M. B. Spire, who signed all the instruments mentioned, to purchase the machinery. M. B. Spire paid three of the notes, but in other dealings with the machine company incurred other obligations which he secured by a second and a third mortgage on the engine. Ambrose Spire died, and after the maturity of the unpaid notes they were presented and allowed as a claim against his estate. The administrator paid the claim, and the

machine company discharged the mortgage of record. The administrator, claiming right of subrogation, attempted to keep the mortgage alive by filing a renewal affidavit. There was evidence for the machine company that it refused to accept M. B. Spire's sole order for the machinery; that the order which was approved was accepted because of Ambrose Spire's signature; and that credit was subsequently extended to M. B. Spire on the second and third mortgages because Ambrose Spire was depended on for payment of the notes secured by the first mortgage. M. B. Spire is bankrupt. The judgment was that the administrator recover from M. B. Spire, and that the administrator have a first lien on the engine.

The judgment was rendered in disregard of the statute fixing the relation of Ambrose Spire to the payee of the notes, and the brief of the administrator completely ignores the decisions of this court interpreting the statute. Ambrose Spire signed the notes as maker. His obligation to the machine company was measured by the terms of the instrument which he signed. The debt was his. He was principal debtor, primarily liable under the negotiable-instruments law (*Bank v. Jeltz,* 101 Kan. 537, 167 Pac. 1067; *Bank v. Hoyt,* 103 Kan. 44, 172 Pac. 994; *Lonnon v. Batchman,* 103 Kan. 266, 173 Pac. 415.) The evidence concerning suretyship merely established the relation of Ambrose Spire to his comaker. It was without force to modify the relation of Ambrose Spire to the machine company—the relation of maker established by his signature and the negotiable-instruments law. (*Bank v. Jeltz,* supra.) The administrator cites none but old cases from the American decisions and American reports. The provisions of the statute are too simple and too plain to require interpretation, and the court has no function to perform but to apply them. A person not desiring to become principally and primarily liable may indicate the capacity in which he desires to be bound, or he may decline to sign. Having signed as maker before delivery of the instrument, he is bound as maker, and, in the absence of fraud, accident, or mistake, cannot show liability in any other capacity.

Being a maker, who was primarily and absolutely bound to pay the notes according to their tenor, Ambrose Spire was, as between himself and the payee, a principal debtor, and payment by his administrator discharged the notes. (Negotiable-

instruments Law, § 126, Gen. Stat. 1915, § 6647.) Discharge of the notes discharged the lien of the mortgage. It was then the duty of the mortgagee to enter a release of the mortgage on the record. The administrator could do nothing to keep the mortgage alive, and nothing remained on which equitable assignment or equitable subrogation could operate.

It is elementary that subrogation is indulged only in favor of one who pays the debt of another, or one who pays to protect his own rights, and not in favor of one who discharges a debt for which he was himself originally and primarily liable. In 37 Cyc., at page 374, the general rule is stated as follows:

"Subrogation is allowed only in favor of one who, under some duty or compulsion, legal or moral, pays the debt of another; and not in favor of him who pays a debt in performance of his own covenants: for the right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all. In such cases payment is extinguishment."

In this instance Ambrose Spire had no lien on the property covered by the chattel mortgage to be protected, and he had no other interest to be conserved by payment of the notes. The duty to pay did not arise because of the default of another. He was constrained to pay by nothing except the force of his own personal and primary obligation, and payment under such circumstances is extinguishment.

In the well-considered opinion in the case of *Royal Arcanum v. Cornelius,* 198 Pa. St. 46, cited in support of a portion of the text quoted from Cyc., it is said:

"The object of subrogation is to place a charge where it ought to rest, by compelling the payment of a debt by him who ought in equity to pay it. 'In short, the doctrine of subrogation is that one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnify from the fund out of which should have been made the payment which he made.' (Sheldon on Subrogation, § 11.) . . . Nor will subrogation ever be enforced . . . to the prejudice of the legal or equitable rights of others." (p. 50.)

In this instance, subrogation would not compel M. B. Spire to pay the notes, but would compel the creditor to pay back to its principal debtor the amount of the notes, in order to protect its second and third mortgages. As between the machine company and Ambrose Spire, the chattel security was not a

fund out of which payment should be made. It was Ambrose Spire's duty to pay the notes himself. The creditor did not owe to him any of the duties which a creditor owes to one who is merely surety for a principal obligor. The rule that, when a creditor has two funds to which he may resort for satisfaction of his debt, he must first appropriate the one which is not burdened by other liens, does not apply between a creditor and his principal debtor. (*Rogers v. Meyers et al.,* 68 Ill. 92.) Because he was principal obligor, primarily liable for the debt, Ambrose Spire had no interest in the appropriation of the engine to the payment of the notes. So far as he was concerned, the machine company might have released the chattel mortgage outright without payment, and thus might have advanced the second and third mortgages to first and second places. (*Bank v. Jeltz,* 101 Kan. 537, 167 Pac. 1067.) The machine company had the right to look to Ambrose Spire for satisfaction of the first mortgage for the very purpose of making the second and third mortgages good—as the evidence shows it actually did—and subrogation may not be indulged to the prejudice of that right.

If the first mortgage had merely been kept alive for the security of the administrator in case the property more than satisfied the second and third mortgages, perhaps the machine company could not have complained. Since it is apparent from the evidence that such an order would be of no value to the administrator, no beneficial purpose would be subserved by permitting one to be made.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment in favor of the machine company.