No. 26,199.

THERESA M. BLITZ, a Minor, by Her Next Friend, MARY ERICKSON (Plaintiff), v. F. P. METZGER and ISAAC M. BLITZ, *Appellee*, Defendants, and MARY ERICKSON, Intervener, *Appellant*.

SYLLABUS BY THE COURT.

1. HOMESTEADS—*Mortgaged One-half Interest—Effect of Payment of .Rent to Cotenant.* One who is the owner, subject to a mortgage executed by him, of an undivided one-half interest in real property which he occupies as a residence, is not precluded from claiming as against creditors a homestead right therein by paying rent to his cotenant.

2. SAME—*Abandonment—Character of Absence Question for Trial Court.* Occupancy as a residence is essential to the establishment and maintenance of a homestead. When it is shown, or admitted, that one claiming a homestead has moved away from or ceased to occupy the property as a residence, the question whether such absence was temporary is a question of fact, to be determined by the trial court from all the circumstances pertaining thereto, as shown by the evidence, including the purpose of moving from the premises, and the intention to return or to establish a residence elsewhere.

1. Homesteads, 29 C. J. § 398.   2. Id., 29 C. J. §§ 48, 351, 412.

Blitz v. Metzger.

3. Evidence—*Opinion—Intent of Witness.* When the intention or purpose of a party is the subject of inquiry—the fact permissible to be proved under the substantive law of the case—the party may testify to his intent and to the purpose of his acts.

4. Subrogation—*Persons Primarily Liable—Establishing Surety Relation After Payment.* The fact that two persons are primarily liable to the holder of a promissory note does not prevent one of them, after the holder has been paid, from maintaining an action to establish that he is surety for the other and to be subrogated to the rights of the holder in other securities, rights and remedies which he had for the collection of the debt.

5. Same—*Priority of Creditor.* A creditor is entitled to full payment of his debt before subrogation by a surety can be invoked. When the principal had other obligations to the creditor for which he has the securities in question, a surety's right of subrogation does not accrue until (1) he pays the debt of his principal, and (2) his principal is no longer indebted to the creditor upon such securities.

6. Same—*Limitation of Action.* The right of subrogation is inherent in and is implied from the contract of suretyship, and an action for subrogation is barred under our statute in three years from the time the cause of action accrued.

Appeal from Shawnee district court, division No. 1; James A. McClure, judge. Opinion filed December 5, 1925. Affirmed.

*Eugene S. Quinton, James E. Larimer, John M. Williams* and *Arthur F. Davis,* all of Topeka, for the appellant.

*A. E. Crane, W. E. Atchison* and *B. F. Messick,* all of Topeka, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This appeal involves the claim of a creditor, who intervened in a partition action and endeavored to subject the share of the defendant in that action, arising from the sale of the property sought to be partitioned, to the payment of her claim. The questions argued are whether the property partitioned was the homestead of defendant, the intervener's right to subrogation, and the statutes of limitations applicable thereto. The case was tried to the court, who made findings of fact and conclusions of law and rendered judgment for defendant. The intervener has appealed from the judgment on the pleadings and findings of fact only—the evidence is not before us. The findings of fact are as follows:

"1. The property in controversy consists of a dwelling house and is owned

_____

3. Evidence, 22 C. J. § 704; 23 L. R. A., n. s., 397; 13 R. C. L. 656.  4. Subrogation, 37 Cyc. p. 371; 68 L. R. A. 521, 528; 25 R. C. L. 1327, 1329.  5. Id., 37 Cyc. p. 375.  6. Id., 37 Cyc. pp. 385, 405; 25 R. C. L. 1394.

by the plaintiff, Theresa M. Blitz and I. M. Blitz as tenants in common, each owning an undivided one-half interest therein.

"2. On November 2, 1905, I. M. Blitz married Jennie Erickson, and at that time or shortly thereafter the intervener, Mary Erickson, deeded said property to her daughter, Jennie Erickson, who, together with her husband, lived in the premises until her death on July 23, 1907.

"The plaintiff, Theresa M. Blitz, was born in December, 1906, and is the daughter of Jennie E. Blitz and I. M. Blitz. Jennie Blitz died intestate, leaving as her heirs at law the plaintiff and the defendant, I. M. Blitz.

"3. At the death of Jennie E. Blitz, Mary Erickson moved into the property in question, and took care of and supported, at her own expense, the plaintiff, her granddaughter, who was then only eight months old, and so lived there until the second marriage of I. M. Blitz in 1916; and that during part of such interval the defendant, Blitz, lived at the Copeland hotel, and the rest of the time boarded with Mary Erickson.

"4. In May, 1916, Blitz married a second time, and in the fall of that year he and his wife moved into the premises, Mrs. Erickson and the plaintiff removing from the premises at that time. The defendant and his wife occupied the premises as a home from September 6, 1916, to October, 1917, during which time another child was born to the defendant. In October, 1917, Blitz and wife went to room and board on Buchanan street, leaving their furniture and household effects upon the premises in question. They lived on Buchanan street for about two months and then went to reside with Mrs. Blitz's mother at 422 Harrison street, Topeka, Kan., until the fall of 1919. They testified that the reason they left the premises in question was because the house needed repairing and the radiators were broken and incapable of furnishing proper heat for their infant child, and further, that they did not have money with which to repair the property. While they resided with Mrs. Blitz's mother they paid board and room rent.

"5. After the removal of Blitz and wife in 1917, the house remained vacant for four months. In February, 1918, W. C. Stephenson, the guardian of the plaintiff, rented the property to Mr. Reynolds for $30 per month, applying the rent so received upon the expenses incident to the repair of the premises. After the removal of Mr. Reynolds from the premises, Blitz stored his furniture, and the property was thereafter rented to another party for a short time. In September, 1919, Blitz and wife moved back into the property and lived there until the property was sold by the sheriff in the partition proceedings in 1922. For the first three months after Blitz returned to the property he paid Stephenson, the guardian, $30, and the rest of the time contracted to pay $50 per month for the occupancy of the house, and Stephenson applied the same upon the balance of the repair bills.

"6. Blitz and wife testified that they did not intend to abandon the property when they left it in September, 1917, but intended, after the property was repaired, to return, and in the absence of testimony to the contrary, the court finds such to be the fact.

"7. After the sale of the premises Blitz purchased other property, and testified that he intends to apply his share of the proceeds of the sale of the property in question to the payment of the purchase price of such other property.

Blitz v. Metzger.

"8. On April 1, 1911, the defendant, Blitz, executed and delivered a warranty deed conveying his interest in the property to F. P. Metzger, president of the German-American State Bank, as security for 'any indebtedness' that he owed or might owe in the future to said bank. The deed—in fact was a mortgage—was held by Metzger for the benefit of the bank and was duly recorded in 1911.

"9. On March 18, 1912, at the instance and request of I. M. Blitz, and to enable him to borrow money from the German-American State Bank, the intervener, Mrs. Erickson, executed a promissory note for $500 due on demand, payable to I. M. Blitz, in form and manner as requested by him. And on May 17, 1912, at the instance and request of the said I. M. Blitz, and solely for his benefit, the said intervener, Mrs. Erickson, signed with I. M. Blitz a promissory note for the sum of $500, due on demand, payable to the German-American State Bank. Blitz endorsed said first mentioned note and delivered it to the German-American State Bank. Mrs. Erickson at the time she signed said notes did not owe the bank or Blitz any sum whatever, and received no consideration for executing either of said notes; but the same was executed by her as surety solely for the accommodation and benefit of I. M. Blitz, as principal, who received the money thereon from the bank, so far as Mrs. Erickson and I. M. Blitz were concerned. And that the said warranty deed described in finding No. 8 above, was held by the bank as security for the payment of said notes.

"10. Said notes were not paid by either Blitz or Mrs. Erickson, and on February 5, 1914, the German-American State Bank brought suit against Mrs. Erickson alone to recover thereon, and on July 3, 1915, procured a judgment against her for $1,332. Subsequently the bank caused an execution to issue upon its judgment and levied upon certain property belonging to Mrs. Erickson, who then paid said judgment in full and the same was satisfied of record. Thereafter and on November 28, 1916, I. M. Blitz executed his promissory note, due six months after date, to Mrs. Erickson in the sum of $1,332, the same being the amount Mrs. Erickson was obliged to pay upon the judgment recovered against her only by the bank upon the promissory notes described in the above finding. Blitz defaulted in the payment of said note when it became due, and Mrs. Erickson brought suit against him to recover the amount thereof, with interest, and on February 4, 1918, recovered a judgment against him for $1,458.39. It is this judgment which she claims is a lien upon the property in question.

"11. I. M. Blitz has paid no part of said judgment mentioned in the foregoing finding, nor has he paid Mrs. Erickson any sum of money on account of the notes executed in 1912, or reimbursed her for the payment of the judgment rendered in favor of the German-American State Bank in 1915, and there is due Mary Erickson from Blitz the sum of $1,458.39, with interest thereon at the rate of eight per cent per annum, from February 4, 1918. On February 14, 1922, F. P. Metzger, upon the request of the German-American State Bank, reconveyed the property to Blitz. The deed was dated October 24, 1921, but was not delivered until February, 1922, and at that time

and for at least two years prior to the execution of said deed I. M. Blitz was not indebted to the bank.

"12. When Mrs. Erickson learned of the execution of the deed by Blitz to Metzger she unsuccessfully attempted to ascertain all the facts with reference thereto. She had no knowledge, however, that the deed was intended to operate as a mortgage to secure any indebtedness Blitz might owe the bank until the trial of the partition suit, April 12, 1923, and upon learning of such fact she asked and obtained leave of court over the objection of defendant Blitz to file, on July 14, 1923, an amendment to her intervening petition, setting out the claim of subrogation.

### "CONCLUSIONS OF LAW.

"1. The interest of I. M. Blitz in the property in question is exempt, as being his homestead, and that the same is not subject to execution to satisfy the judgment of said intervener, Mrs. Mary Erickson. The interest of Blitz in the property being exempt, his share of the proceeds of the sale, under the evidence in the case, would likewise be exempt.

"2. Although the two notes executed in 1912, and referred to in finding 9, were for the benefit of Blitz and he alone received the money thereon from the bank, yet Mrs. Erickson was herself originally and primarily liable thereon, and the payment of the bank's judgment upon said notes by her in 1915 extinguished the debt and would not entitle her to be subrogated to the security held by the bank.

"3. If the doctrine of subrogation is applicable, the intervener's right thereto is barred by the three-year statute of limitations.

"4. From all of the evidence and circumstances in the case the intervener is not entitled to subrogation herein."

Appellant complains of the conclusion of the court, based upon the facts found, that the property was the homestead of I. M. Blitz. It is argued that, since the court, upon the pleadings as framed in the partition action proper, determined that the deed from Blitz to Metzger was an absolute conveyance, Blitz is bound by that judgment, and since the property was owned, as determined by that decree, for some years, by Metzger, it was not possible for Blitz during that time to have a homestead interest in the property; in other words, that Blitz could not have a homestead interest in the property of Metzger. Upon the trial between the intervener and Blitz the issue was clearly raised whether the deed to Metzger was an absolute conveyance or a mortgage. From the facts found by the court it was a mortgage, for it was given as a security for a debt. (*Hoyt v. National Bank*, 115 Kan. 167, 222 Pac. 127.) The fact that in earlier pleadings in the partition action, when this intervener was not a party, Blitz had taken a position inconsistent with his present contention that the instrument was a mortgage—if

he did take such inconsistent position—though a proper element to take into consideration, did not prevent the court from making full inquiry of the matter and finding the facts as the evidence showed them to exist. Since the instrument was found to be a mortgage, there is no legal objection to one claiming a homestead in mortgaged property. It is argued that Blitz could not claim a homestead interest in the property because he paid rent for a time at $30 per month, and later at $50 per month, to W. C. Stephenson, guardian of Theresa M. Blitz, a minor, and the owner of an undivided one-half interest in the property. Blitz is not claiming a homestead as against Theresa M. Blitz, or her guardian, W. C. Stephenson. One joint owner of property cannot claim a homestead as against the other joint owners, but may against creditors. (*Banner v. Welch*, 115 Kan. 868, 871, 225 Pac. 98, and cases there cited.) So long as Blitz was using the entire property it was perfectly proper for him to pay rent to Stephenson, as guardian of the other joint owner, and such payment is not inconsistent with his claim against creditors of a homestead interest in his share of the property. It is argued that the court was not justified in finding number 6, based upon what Blitz and his wife testified, and had told others, who testified to their intention of returning to the property as a home. It is contended that these were self-serving declarations upon which the homestead right cannot be predicated. *Quinton v. Adams*, 83 Kan. 484, 112 Pac. 95, is cited in support of this contention, but it does not support it. There the declarations characterized as self-serving were considered, together with other evidence upon the question, and were held to be refuted. It was said:

"All the evidence considered, the appellee's claimed intention to occupy the land in controversy as a residence for his family is refuted." (p. 488.)

In the same case it was said:

"The affairs of men are too varied to permit them to occupy their homesteads every moment of time. Duty, necessity or even pleasure may occasion extended absences which will not defeat the exemption. But it must appear from the circumstances that an absence in fact is genuinely temporary or the homestead privilege is lost." (p. 488.)

Occupancy as a residence is essential to the establishment and maintenance of a homestead. (Const., art. 15, § 9; R. S. 60-3501.) When it is once shown, or is admitted, that the party claiming the homestead moved away from, or ceased to occupy, such property

as a residence, but such party contends that such absence was temporary, the evidence should show a genuine case of temporary absence or the homestead privilege is lost. The question whether such absence is temporary is one of fact to be determined by the trial court from all the facts and circumstances shown by the evidence pertaining thereto. The necessity or purpose of the absence and the intention, if any, of returning, are matters competent to be considered, and their consideration has been approved frequently by former opinions of this court. (*Smith v. McClintick*, 108 Kan. 833, 196 Pac. 1089; *Adams v. Evans*, 19 Kan. 174; *Garlinghouse v. Mulvane*, 40 Kan. 428, 19 Pac. 798; 29 C. J. 838, *et seq.*)

In the recent cases of *Carlson v. Ritchie, Administrator*, 115 Kan. 722, 224 Pac. 895, and *Owens v. Wagers*, 118 Kan. 517, the parties, respectively, testified to their purpose and intention, while temporarily absent, to retain and to return to their homestead. Generally, when the purpose or intention of a party is the subject of the inquiry, the fact permissible to be proved under the substantive law involved in the case, the party may testify to his intent and to the purpose of his acts. (1 Wigmore on Evidence, 2d ed., 1017 *et seq.*) The finding of the court in this case supports the conclusion that the property in question was the homestead of I. M. Blitz.

Appellant objects to the trial court's second conclusion of law— that Mrs. Erickson was not entitled to subrogation because she was originally and primarily liable upon the note to the bank. This is an erroneous conclusion. The case of *Spire v. Spire*, 104 Kan. 501, 180 Pac. 209, and authorities there cited, is relied upon to support the conclusion; but the situation is not the same, and the case does not apply. In that case the controversy was between one of two makers of a note and the holder; in this case there is no controversy with the holder. The Guaranty State Bank having been paid all Blitz ever owed it, is no longer interested in the security and is not a party to this controversy. The controversy here is, as to one note, between two joint makers in which one claims to have been surety for the other, and, as to the other note, the claim is that the intervener was an accommodation maker for the payee, who was the principal debtor. The classification, made by the negotiable instruments law, of persons primarily liable (R. S. 52-103) and those secondarily liable (R. S. 52-902, 52-903), refers to the liability of such persons to the holder of the instrument. It does not destroy the right, in an action between themselves after the holder has been paid,

Blitz v. Metzger.

of one primarily liable to the holder from showing that he was surety to another party who was either primarily or secondarily liable to the holder. This is recognized in the last paragraph of the opinion in *Spire v. Spire,* supra. In 25 R. C. L. 1361, it is said:

"It has sometimes been said that the doctrine of subrogation is not applicable between persons who are equally bound, except by virtue of contract. Of course, so long as such parties remain equally bound, the right does not attach; but they cease to be equally bound when one obligor discharges an obligation resting upon himself and his coöbligor. Both are bound to the obligee; but *inter se,* each is primarily, not equally, liable for his own share, and secondarily liable for the share of the other; and when he pays the share of such other, all the conditions essential for the application of the doctrine arise. The equity of subrogation is one eminently calculated to do exact justice between persons who are bound for the performance of the same duty or obligation, and is one, therefore, which is much encouraged and protected."

It may be noted that the negotiable-instruments law nowhere mentions sureties. If a person is a surety on a promissory note, his rights against his principal, after payment has been made to the holder, are governed by the general rules applicable to principal and surety. (8 C. J. 73.)

A surety, on paying the debt of the principal, is entitled to be subrogated to the rights of the creditor in all or any of the securities, means or remedies which the creditor has for enforcing payment against his principal. (25 R. C. L. 1327; 37 Cyc. 380.) Whether the surety knew of such securities and remedies makes no difference. (*Seibert v. True,* 8 Kan. 52.) Subrogation is a creature of equity invented to prevent a failure of justice, and is broad enough to include an instance in which one party is required to pay what is, between them, the debt of another. It does not depend upon contract nor the absence of contract, but is founded upon principles of natural justice. (*New v. Smith,* 94 Kan. 6, 16, 145 Pac. 880; *Olson v. Peterson,* 88 Kan. 350, 128 Pac. 191; *Crippen v. Chappel,* 35 Kan. 495, 11 Pac. 453.) The creditor is entitled to full payment of his debt before subrogation can be invoked. (*Bartholomew v. National Bank,* 57 Kan. 594, 47 Pac. 519; *Spire v. Spire,* supra.)

Applying these principles to the facts found by the court, it is clear that as between Mrs. Erickson and I. M. Blitz the latter should pay this debt. Mrs. Erickson, upon the payment of it, when sued by the bank and when execution was issued upon her property, became entitled to be subrogated to the rights of the bank upon the mortgage in the form of a deed which Blitz had executed to Metzger to secure

the payment of his indebtedness to the bank. But Mrs. Erickson could not then bring an action to enforce her right of subrogation unless Blitz owed the bank nothing for which his mortgage had been given to secure. The fact that Mrs. Erickson did not know of the mortgage given by Blitz to the bank at the time she became a surety for Blitz did not defeat her right to such subrogation.

Appellant complains of the court's third conclusion of law; that if Mrs. Erickson were entitled to subrogation, her right to pursue that remedy was barred by the statute of limitations. This necessarily involves two questions: First, when does the statute of limitations begin to run in such a case; and, second, what statute of limitations applies? Like any other right which may be enforced by an action in court, the right to subrogation may be lost by laches or barred by the statute of limitations. (37 Cyc. 385.) Mrs. Erickson would have no right to pursue her remedy of subrogation under the facts in this case until, first, she paid the sum for which she was surety for Blitz; and, second, until Blitz had paid the bank all the indebtedness which the deed he had executed to Metzger was given to secure. As soon as those two things occurred Mrs. Erickson had a right to maintain an action for subrogation, and her cause of action accrued at that time. Mrs. Erickson paid the sum for which she was surety for Blitz when she paid the judgment the bank secured against her. This judgment was rendered on July 3, 1915. The findings do not show the date of its payment, except that it was sometime before November 28, 1916. The findings do not definitely fix the date when Blitz was last indebted to the bank, but there is a finding that he did not owe the bank anything for at least two years prior to October 24, 1921, which would make October 24, 1919, the latest date Blitz owed the bank any money for which the deed to Metzger had been given to secure. Mrs. Erickson's right to pursue her remedy of subrogation accrued, therefore, as early as October 24, 1919. She filed her amended intervening petition, first setting up her right of subrogation, on April 12, 1923, more than three years and five months after the latest date shown by the findings that her right to maintain a proceeding for subrogation accrued.

As between the surety and his principal, the right of the surety, upon having to pay the debt of his principal, to be subrogated to the securities, rights and remedies of the creditor, is inherent in the contract of suretyship, just as the right to reimbursement is inherent in such contract.

"The right springs up at the time the suretyship is contracted, though it is not consummated until the debt is paid." (27 A. & E. Encyc. of L. [2d ed.], 209.)

Neither the right of the surety to reimbursement, nor his right to subrogation depends upon whether anything was said in writing or by parol at the time the relation of principal and surety was created; but both the right of reimbursement and the right of subrogation are implied by the relation and are inherent in it. The statute of limitations which applies to an action by the surety for reimbursement applies also to an action by the surety for subrogation. That statute in this state is three years (R. S. 60-306, 2d clause), being upon an implied contract not in writing. (*Burrus v. Cook,* 215 Mo. 496, approving dissenting opinion of Ellison, J., in *Burrus v. Cook,* 117 Mo. App. 385; 37 Cyc. 387; *Farmers' Loan & Trust Co. v. Wilcox County, Ga.,* 298 Fed. 772; *Bell v. Morton,* 38 Ida. 758; *Ault, Appellant, v. Adamson,* 66 Pa. Sup. Ct. 374; *Burrows v. Johntz,* 57 Kan. 778, 48 Pac. 27; *Guild v. McDaniels,* 43 Kan. 548, 23 Pac. 607.)

. Since the action was not brought for more than three years after the cause of action accrued, the court was correct in holding that it was barred by the statute of limitations.

Some of the authorities make the time within which the surety may sue for subrogation depend upon the time within which the creditor could move to enforce the securities, rights and remedies he possesses and which the surety seeks to reach by subrogation, but obviously this is a distinct question. The surety must first proceed by action of some character to establish his right to subrogation, and having, by establishing such right, acquired the right of the creditor to the securities, rights and remedies which he possessed, then proceed to enforce such rights against the persons liable thereon. Such persons are entitled to be heard upon the question of whether they are being pursued within the period of the statute of limitations applicable to them, which period obviously might differ entirely from the period within which the surety may maintain an action for subrogation. We do not mean to say that these parties may not all be joined in one action, but whether in one action or in more than one, the rights of the parties with reference to the time within which the action might be brought are separate and distinct.

Appellant contends that since Mrs. Erickson did not know that the deed to Metzger was a mortgage to the bank to secure Blitz's indebtedness to the bank until April, 1923, the statute would not begin

to run until she knew of that fact. But this contention cannot be sustained. It is only in an action for relief on the ground of fraud that the cause of action is not deemed to have accrued until discovery of the fraud. (R. S. 60-306, 3d clause; *Becker v. Porter,* 119 Kan. 626.) Ordinarily the fact that one does not know that he has a cause of action does not prevent the running of the statute of limitations. (*Perry v. Wade,* 31 Kan. 428, 2 Pac. 787; *Railway Co. v. Grain Co.,* 68 Kan. 585, 75 Pac. 1051; *McAllister v. Fair,* 72 Kan. 533, 84 Pac. 112; 37 C. J. 969.)

The judgment of the court below will be affirmed.