No. 38,180

C. E. FENLY, *Appellant,* v. CLEO REVELL doing business as CLEO REVELL TRUCK SERVICE, and ARTHUR D. BRANSON, *Appellees.*

(228 P. 2d 905)

Opinion filed March 10, 1951.

*Earl C. Moses, Jr.,* of Great Bend, argued the cause, and *J. A. Mermis, Jr.,* of Great Bend, was with him on the briefs for the appellant.

*Tudor W. Hampton,* of Great Bend, argued the cause, and *S. R. Blackburn* and *Ed R. Moses,* both of Great Bend, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: The plaintiff instituted this action against the defendants to recover money he had paid a third party in settlement of damages sustained by the latter as a result of defendants' negligence while in his employ. The appeal is from a judgment sustaining a demurrer to an amended petition, based on grounds such pleading showed on its face the plaintiff was not the real party in interest and failed to state facts sufficient to constitute a cause of action in his favor and against defendants.

The pleading in question, which does not appear from the record before us to have been motioned and is therefore entitled to a liberal construction, contains everything required to permit proper disposition of all questions raised by the parties and should be quoted at length. Omitting formal averments and the prayer it reads:

"3. That at all times hereinafter mentioned Cleo Revell was a contractor in the business of transporting equipment for those who desired and contracted for his services; that at all times hereinafter mentioned Arthur D. Branson was an agent and employee of said Cleo Revell assisting Cleo Revell in carrying out his business of the transportation of equipment.

"4. That on or about the 11th day of July, 1948, the plaintiff employed defendants to assist in moving a rotary rig belonging to Braden-Greene Drilling Company, located at Well No. C-3 on the Braden lease, Southeast of Hutchinson, Reno County, Kansas, that plaintiff contracted to move for said Braden-Greene Drilling Company; that in performing this job defendant, Arthur D. Branson, was using a truck on which a gin pole was mounted; a winch line was run from a winch on the truck through the snatch block of the gin pole, and attached to the rotary rig; that while in the process of hoisting the rotary rig on to plaintiff's truck, by means of the winch and gin pole the operator of defendant's truck negligently permitted the end chain on the end of the winch line to pass through the snatch block on the gin pole, which snatch block was too small to permit the entry of the end chain, thereby causing the end chain to break because of undue strain and permitted the rig to fall, damaging said rig thereby.

"5. That the injury sustained by plaintiff was due to the negligence of defendant which was the sole and proximate cause of plaintiff's injury in the following particulars, to-wit:

"(a) Failure to maintain a proper lookout.

"(b) Failure to properly operate the winch on defendant's truck.

"6. That plaintiff was under a duty and obligation to pay Braden-Greene Drilling Company the sum of Two Thousand Nineteen Dollars and Eleven Cents ($2,019.11) for the damage done to said rig caused by defendant's negligence and that plaintiff has paid said amount in full; that plaintiff is subrogated to

the rights of Braden-Greene Drilling Company against defendants for the amount of said damage, namely Two Thousand Nineteen Dollars and Eleven Cents ($2,019.11) which plaintiff was caused to pay due to the negligence of defendants and that all times hereinabove mentioned plaintiff was free of negligence in the premises."

A careful examination of the quoted allegations of the petition, especially those to be found in paragraph 6 thereof, makes it obvious the instant action is predicated upon the theory that where an employer or master, not at fault, has become obligated to respond in and does pay damages to a third person for the negligence of his employee or servant, he will be subrogated to the rights of the injured party and may maintain an action to recover from the employee or servant, the one primarily liable, the amount so paid. Consideration of the demurrer and the grounds on which the judgment sustaining it were based makes it equally clear it is the position of appellees and the view of the trial court that appellant was not the real party in interest and hence could not maintain the action because the facts and circumstances set forth in the amended petition did not give rise to a cause of action. Thus it appears the paramount questions for decision are: (1) Does the petition contain averments disclosing the essential facts on which appellant's theory depends and if so (2) whether those facts are sufficient to constitute a cause of action in favor of appellant and against appellees.

We have little difficulty in concluding the first question to which we have just referred must be answered in the affirmative. Whatever may be said for appellees' contentions respecting certain allegations of the petition, to which we shall subsequently refer, it is certain those allegations must be construed as charging that while engaged as employees in the performance of work for appellant, and without any negligence on his part, the appellees, negligence resulted in injury to the oil rig appellant was moving under contract, thus placing him under legal obligation to pay the owner of such rig for the damages it had sustained and that appellant did pay those damages.

Decision of the second question cannot be reached in as summary a manner.

The rule, so well established as to hardly require citation of authorities, is that an agent, a servant, or an employee, is liable to and may be sued by his principal, or his master, or his employer,

for damages which the latter, in the absence of fault on his part, has been compelled to pay third persons because of the negligence of such agent, servant, or employee. See, e.g., *Bradley v. Rosenthal,* 154 Cal. 420, 97 Pac. 875; *Ga. So. & Fla. Ry. Co. v. Jossey,* 105 Ga. 271, 31 S. E. 179; *Denver-Chicago Trucking Co. v. Lindeman,* 73 Fed. Supp. 925; *Standard Surety & Casualty Co. v. Metropolitan Cas. Co.,* (Ohio App.) 67 N. E. 2d 634; *Frank Martz Coach Co. Inc. v. Hudson Bus &c., Co.,* 23 N. J. Misc. 342, 44 A. 2d 488. For legal treatises, and other decisions cited therein, supporting the rule see 42 C. J. S., Indemnity, 596, § 21; 27 Am. Jur. 467, §§ 18, 19; 110 A. L. R. anno 834. Numerous other decisions will be found in American Digest System, Indemnity, § 13 (1) (i).

In the main the foregoing decisions and authorities deal with the question of liability of agents, servants, or employees, to principals, masters, or employers, rather than with the right of the latter to maintain actions against the former on the theory that under related conditions and circumstances they have become subrogated to the rights of the injured persons therein involved. Even so it should be kept in mind that in holding the employee is liable they also hold the employer may maintain an action against him under the related conditions and circumstances and to that extent must be considered as recognizing that right exists under the equitable doctrine of subrogation to which we now direct our attention.

There is no need in this opinion to attempt to write a treatise on the doctrine of subrogation. Its essential character is well known. It has been often stated that it is a creature of equity invented to prevent a failure of justice and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience ought to be discharged by the latter (*Safety Deposit Co. v. Thomas,* 59 Kan. 470, 53 Pac. 472; *Blitz v. Metger,* 119 Kan. 760, 767, 241 Pac. 259; *Gerseta Corporation v. Equitable Trust Co.,* 241 N. Y. 418, 150 N. E. 501; 43 A. L. R. 1320; *Colonial Fire Underwriters Br. v. Utica Mut. Ins. Co.,* 69 N. Y. S. 2d 623; *In Re Van Hoesen's Will,* 81 N. Y. S. 2d 392; *In Re Stafford's Will,* 98 N. Y. S. 2d 714; *In Re Jamison's Estate* (No.) 202 SW 2d 879; *Kenney v. Kenney,* (Cal) 97 ACA 64, 217 P. 2d 151; 50 Am. Jur., Subrogation, 683, § 6.) It has also been said it is of two kinds "legal" and "conventional" and that the right of legal subrogation as distinguished from conventional

subrogation arises by operation of law and does not depend upon contract, assignment or agreement. (*City of New York Ins. Co. v. Tice,* 159 Kan. 176, 181, 152 P. 2d 836; 60 C. J. 694, 695, 700, §§ 1, 2, 7; 50 Am. Jur. 679, 682, 686, §§ 3, 5, 8.)

In the beginning the doctrine of subrogation was somewhat strictly and narrowly applied and was limited to transactions between principals and sureties. As the years went by it was liberalized and expanded to the extent it can now be said that it is a favorite of the law and applied to almost every kind of a situation where it will subserve the ends of justice and equity. (50 Am. Jur. 693, § 15; 60 C. J., Subrogation, 706 § 17; *Smith v. Clavey Ravinia Nurseries,* 329 Ill. App. 548, 69 N. E. 2d 921; *3105 Grand Corp. v. City of New York,* 288 N. Y. 178, 42 N. E. 2d 475.) An excellent discussion respecting the flexibility, expansion, and scope of the doctrine appears in 50 Am. Jur, Subrogation, 685, 686, § 7, where the following statement appears:

"The doctrine of subrogation is not a fixed and inflexible rule of law or of equity. It is not static, but is sufficiently elastic to take within its remedy cases of first instance which fairly fall within it. Equity first applied the doctrine strictly and sparingly. It was later liberalized, and its development has been the natural consequence of a call for the application of justice and equity to particular situations. Since the doctrine was first ingrafted on equity jurisprudence, it has been steadily expanding and growing in importance and extent, and is no longer, as formerly, limited to sureties and quasi sureties, but is now broad and expansive and has a very liberal application. As now applied, it is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. Its use to enforce restitution in order to prevent unjust enrichment has elsewhere been pointed out.

"The doctrine of subrogation embraces all cases where, without it, complete justice cannot be done. Bottomed on this premise, there is, it has been said, no limit to the circumstances that may arise in which the doctrine may be applied. . . ."

In line with the statements made in the preceding quotation all the authorities now recognize that the doctrine of subrogation may be invoked in favor of persons who are legally obligated to make good a loss caused by the negligence or tortious acts of another. They also hold that an employer, who has become obligated to respond in damages for an injury caused solely by his employee's negligence, comes within the rule, and is subrogated to the injured person's right of action against the employee. 50 Am. Jur. 706, 707, §§ 36, 38; 60 C. J. 728, § 37; Restatement of Law, Restitution, 418, § 96.

Application of the rule is well illustrated in *Maryland Casualty Co. v. Aetna Casualty & Surety Co.*, 191 Va. 225, 60 S. E. 2d 876 and in *Losito v. Kruse, Jr.*, 136 Ohio St. 183, 24 N. E. 2d 705, 126 A. L. R. 1194. Each of those cases holds that where, under the doctrine of respondeat superior, a master becomes liable for personal injuries caused solely by the negligent act of his servant and is obligated to respond in. damages by reason of such liability, he will be subrogated to the rights of the injured party and may recover from the servant, the one primarily liable. See, also, *Frank Martz Coach Co. Inc. v. Hudson Bus &c., Co.*, supra.

Our search of the authorities reveals one decision, *Smith v. Foran*, 43 Conn. 244, 21 Am. Rep. 647, which, from the standpoint of facts and issues, can be said to be on all fours with the case at bar. In our opinion, it must be regarded as decisive of the issues here involved and in and of itself, even though the decisions heretofore cited did not compel a similar view, requires the conclusion the trial court erred in sustaining the demurrer to the petition.

The facts in *Smith v. Foran*, supra, the issues involved, and the reasons on which the court based its judgment, are accurately reflected in the syllabus of the court which reads:

"A servant of the plaintiffs, who were common carriers, by his carelessness injured property which they were transporting and which was in his charge. The plaintiffs without suit paid the owner a certain sum in settlement, which was found to be the actual damage to him. Held.- 1. That the servant was liable to the plaintiffs for the actual damage sustained by them. 2. That it was not necessary that the liability of the plaintiffs and the amount for which they were liable should be first established by a suit against them. 3. That if the plaintiffs had unnecessarily paid the owner more than the actual damage to him, they could have recovered of the servant only such actual damage, and if they had settled for less, they could have recovered only for the damage actually paid." (Syl.)

Another decision, dissimilar from a factual standpoint but nevertheless highly persuasive because of the reasoning of the opinion as to why the petition therein involved, containing allegations similar in import to those of the instant pleading, stated a cause of action based on subrogation, is reported as *The Jersey City*, 43 Fed. 166.

In an attempt to forestall the conclusion just announced the appellees advance a number of ingenious contentions which should be mentioned and are entitled to serious consideration.

It is first suggested that our reports reveal no case where it has been held an employer has a cause of action and is entitled to main-

tain it against his employee under the conditions and circumstances here involved. Conceding this to be true, the short answer to this contention is that the mere fact the doctrine of subrogation has not been previously invoked in a similar situation is not a prima facie bar to its applicability.

Next appellees direct attention to G. S. 1949, 60-401, providing, "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 27[60-403], but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract.", and insist that under its terms, and our decisions construing them, a right of action against a party for damages to the property of another is not assignable and confers on the assignee no right of action maintainable in his own name against a wrongdoer.

To concede, without discussing the point, that our decisions recognize the section of the statute just quoted is entitled to be given the force and effect placed upon it by the appellees is of no avail to them. The answer to this contention is to be found in the authorities heretofore cited. Shortly stated it is that legal subrogation does not depend upon contract or assignment but follows as the legal consequence of the acts and relationship of the parties. Appellent's cause of action as well as his right to maintain the action exists by operation of law irrespective of and without regard to the existence of any assignment or agreement.

In connection with what has just been stated it is interesting to note that this court has recognized and held that notwithstanding the statute on which appellees rely the doctrine of "conventional" subrogation is applicable to subrogation contracts. In *City of New York Ins. Co. v. Tice,* supra, we held:

"The rule that rights of action in tort are not assignable is not applicable to an action by an insurer to recover from the tort-feasor the amount which it has been required to pay to a property owner under a subrogation clause in a policy indemnifying such owner against property damage by collision or accident." (Syl. ¶ 1).

Based on reasoning analogous to that found in the opinion of that decision we see no sound reason why the doctrine of "legal" subrogation should not be invoked and applied in cases where an employer who is secondarily liable has paid off the obligation for which his employee is primarily responsible.

Finally it is argued that appellant (1) was a mere volunteer or

stranger and therefore not entitled to invoke the doctrine of subrogation and (2) that in any event before predicating liability on such a theory he was obliged to wait until his liability had been established by final judgment. Each of these contentions is answered by the decisions to which we have previously referred. However, it should perhaps be here pointed out with more specificity that appellees' position on the first point cannot be upheld because a "stranger" or "volunteer", as those terms are used with reference to the subject of subrogation, is one who cannot become liable for the obligation in question and whose property is not charged with payment thereof and cannot be sold therefor, in any event resulting from the existing state of affairs. (See *Reed v. Ramey*, 82 Ohio App. 171, 80 N. E. 2d 250; 50 Am. Jur., Subrogation, 690, 695 to 699, incl., §§ 12, 20 to 23, incl., 60 C. J. 716, 728, §§ 27, 37.) Indeed our own decisions (See *Old Colony Ins. Co. v. Kansas Public Ser. Co.*, 154 Kan. 643, 121 P. 2d 193) recognize that a person secondarily liable who makes a payment, for which subrogation is claimed, for the protection of his own interest or in discharge of an existing liability is not to be regarded as a mere volunteer. Aside from what has been heretofore stated all that need be said with respect to their position on the second point is that the voluntary payment by one whose liability is secondary for an injury to a third person does not negative his right to idemnity from the wrongdoer primarily liable but merely varies the degree of proof required to establish the latter's liability (See *Colonial Motor C. Corp. v. New York Cent. R. Co.*, 228 N. Y. S. 508; *Popkin Bros., Inc. v. Volk's Tire Co.*, 20 N. J. Misc. 1, 23 A. 2d 162; 42 C. J. S. Indemnity, 603, § 25).

Failing to find anything in appellees' contentions warranting a conclusion different than the one heretofore announced we hold the petition states a cause of action and that the demurer should have been overruled.

The judgment is reversed.