(594 P.2d 257)

No. 49,866

WESTERN SURETY COMPANY, *Appellant*, v. MIKE LOY, *Appellee*.

Opinion filed May 4, 1979.

*Nelson E. Toburen,* of Wilbert, Lassman, Toburen & Wachter, of Pittsburg, for appellant.

*R. L. White* and *K. I. Loy,* of Pittsburg, for appellee.

Before ABBOTT, P.J., REES and MEYER, JJ.

ABBOTT, J.: This is a subrogation action by the plaintiff, Western Surety Company, for recovery of money paid under an official county treasurer's bond.

The defendant, Mike Loy, a certified public accountant, was employed by Crawford County during the years 1969 through 1973 to audit certain county offices, including the office of the then-County Treasurer, Gene E. Masterson. During the same period, Western provided statutory surety bonds for the Crawford County Treasurer, Gene E. Masterson. Masterson misappropriated $5,626.11 in calendar year 1969, $25,714.63 in 1970, $15,640.92 in 1971, $9,757.39 in 1972, and $2,760.35 in 1973, a total of $59,499.40. Under the terms of its bonds, Western was required to pay Crawford County for the losses incurred in 1970 through 1973. *State, ex rel., v. Masterson,* 221 Kan. 540, 561 P.2d 796 (1977). This subrogation action seeks to recover the money paid to Crawford County by Western on the theory that Loy was negligent and that he both expressly and impliedly agreed to perform the audits in accordance with the Minimum Standard

Audit Program which was approved by the State Municipal Accounting Board on September 28, 1963.

During discovery, Western conceded that it was not in privity of contract with Loy and was not relying on fraud or gross negligence on the part of Loy in the performance of the audits. The trial judge granted summary judgment against the plaintiff and made the following pertinent conclusions:

"7. That at no time material to the issues in this suit was there any privity of contract between Plaintiff and Defendant which in anywise involved any of the surety bonds which Plaintiff issued to Treasurer Gene E. Masterson.

"8. That at no time prior to October 23, 1973, (the date the losses were discovered) did any officer, employee, agent, representative, or otherwise of Plaintiff examine or review any of the audits of Defendant of the records or accounts of Gene E. Masterson.

"9. That Plaintiff did not rely upon any of Defendant's audits as a condition precedent to the issuance of any of the surety bonds hereinconcerned.

"10. That Defendant was not guilty of any gross negligence in the performance of the audits hereinconcerned.

"11. That Defendant was not guilty of any fraud in the performance of the audits hereinconcerned.

"12. That the surety bonds hereinconcerned were issued by Plaintiff, as surety to and for Gene E. Masterson as principal, guaranteeing to the Board of County Commissioners, of Crawford County, Kansas, that Masterson would fully account for all money coming into his possession as Treasurer. Masterson admitted that he did not account for about $59,500.00.

"13. That Plaintiff, as surety of Masterson, paid to the Board of County Commissioners the sum of money which is the subject of this suit, and by reason thereof, Plaintiff steps into the position of its principal, Masterson, when seeking recoupment.

"14. That 'subrogation' is an equitable remedy for the benefit of one secondarily liable, who has paid the obligation of another to recover all or part of that party primarily liable, and since Masterson was the party responsible for the loss, the doctrine of subrogation does not apply in this case in behalf of Plaintiff against this Defendant."

We are of the opinion that the trial court erred in granting summary judgment. A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of a material fact and that the moving party is entitled to a judgment as a matter of law. *Anderson v. Beardmore,* 210 Kan. 343, 347, 502 P.2d 799 (1972); K.S.A. 60-256(*c*). We must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to Western. *Sly v. Board of Education,* 213 Kan. 415, 516 P.2d 895 (1973).

In so doing, we are basically dealing with questions of law. However, we note that the trial court found there had been no reliance by Western upon Loy's audit (finding No. 9). That finding appears to be in direct conflict with Western's answer to an interrogatory wherein Western stated it relied on the audits to the extent that continued bond coverage was offered in the absence of anything improper having been disclosed. The question of reliance is in dispute, and on a motion for summary judgment such disputes are to be resolved against the moving party.

Nor do we place any significance on the trial court's finding that Western did not allege fraud or gross negligence. Such an allegation and proof are not required, as was noted in *Martin v. Federal Surety Co.,* 58 F.2d 79, 86 (8th Cir. 1932), where it was said:

"[W]here subrogation is sought by a surety to the rights of the original creditor as against third parties, there must have been either participation in the original wrongful act or negligence on the part of the third party sought to be charged. But it is not necessary that such negligence be culpable or gross."

Additionally, while the question of privity of contract is of importance in a suit against a certified public accountant by a third person (nonclient) who has relied on an audit report of the certified public accountant (Annot., 46 A.L.R.3d 979), it is of no real significance in this case. In Kansas, the right of legal or equitable subrogation arises by operation of law and does not necessarily depend on the existence of privity of contract. *United States Fidelity & Guaranty Co. v. First State Bank,* 208 Kan. 738, 494 P.2d 1149 (1972); *Katschor v. Ley,* 153 Kan. 569, 113 P.2d 127 (1941). Defendant's liability, if any, rests upon a well-recognized principle of law for the protection of sureties which are compelled to make good the defaults of those for whom they have given bonds.

Subrogation is a creature of equity invented to prevent a failure of justice and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable. *Criss v. Folger Drilling Co.,* 195 Kan. 552, 407 P.2d 497 (1965). When no contractual agreement exists, the doctrine is referred to as legal or equitable subrogation, and arises as a matter of law. *Rexroad v. Kansas Power & Light Co.,* 192 Kan. 343, 388 P.2d 832 (1964). Subrogation is termed a "favorite of the law,"

and the mere fact that it has not been invoked in a similar situation is no bar to its applicability. *Fenly v. Revell,* 170 Kan. 705, 228 P.2d 905 (1951). Finally, the right of subrogation has been held to be inherent in a suretyship contract. *Blitz v. Metzger,* 119 Kan. 760, 241 Pac. 259 (1925), *rehearing denied* 120 Kan. 555, 245 Pac. 161 (1926).

The usual application of subrogation places the surety in the shoes of the creditor whose debt from the principal he has satisfied, so that he may proceed against the principal himself. *United States v. Commonwealth of Pa., Dept. of Highways,* 349 F. Supp. 1370 (E.D. Pa. 1972); *Lloyd Wood Construction Co. v. Con-Serv, Inc.,* 285 Ala. 409, 232 So.2d 649 (1970); *United States Fidelity & Guaranty Co. v. First State Bank,* 208 Kan. at 738, Syl. ¶ 1; 73 Am. Jur. 2d, Subrogation § 3.

Here, Western is seeking to enforce Crawford County's rights against a third party (Loy) who it claims was responsible for its loss, and not against its principal, Masterson. The trial court's determination that Western steps into the shoes of Masterson is in error, and in effect placed Western in the wrong pair of shoes. Western as a surety is in much the same position as a guarantor who is called upon to pay an indebtedness to a creditor, for he steps into the shoes of the creditor and is entitled to the same rights that the original creditor had. *Mountain Iron & Supply Co. v. Jones,* 201 Kan. 401, 441 P.2d 795, *rehearing denied* 201 Kan. 824, 443 P.2d 185 (1968). It is not necessary that the surety knew of the remedies available to the county when it paid the principal's obligation. *Blitz v. Metzger,* 119 Kan. at 767.

A surety's right to recourse from a third person, however, does not stand on the same footing as the surety's right to recover from the principal. It has sometimes been stated that when a surety attempts to recover from a third party the equities are weighed, with recovery allowed only when no injustice will be done to the other party by allowance of subrogation. This type of case is best illustrated by cases in which the surety attempts to subrogate against a bank that has paid instruments containing forgeries without negligence on the part of the bank. See *Fidelity & Cas. Co. of N.Y. v. National Bank of Tulsa,* 388 P.2d 497 (Okla. 1963). Simply stated, it would be necessary for Western to prove its equities are superior to the defendant's. The question of equities goes to the merits of the case, and although we express no opinion

on the merits of this case it would appear from the record before us that no such question exists here.

We also have no difficulty in concluding that the trial judge erred when he concluded that the doctrine of subrogation does not apply in this case.

Ample authority exists that a surety may be subrogated to the creditor's right of action against public accountants who by negligently conducting an audit fail to discover earlier defalcations, and as a result additional losses to the creditor occur which would have been prevented if the earlier defalcations had been disclosed. *Martin v. Federal Surety Co.,* 58 F.2d 79; *Dantzler Lbr. & Export Co. v. Columbia Casualty Co.,* 115 Fla. 541, 156 So. 116 (1934); 35 Am. Jur. 2d, Fidelity Bonds and Insurance § 101; 95 A.L.R. 269. An accountant may be held liable to his client for negligence as well as for breach of contract. 1 Am. Jur. 2d, *Accountants* § 15.

A surety on a fidelity bond for a county treasurer who is required to pay the county as a result of the treasurer's defalcation is subrogated to the county's right of action against a third party who is responsible for the loss. In *United States Fidelity & Guaranty Co. v. Citizens' Nat. Bank,* 13 F.2d 213 (D.N.M. 1924), recovery was allowed from a bank which, at the request of a county treasurer, knowingly submitted false bank statements that resulted in defalcations going undetected, and as a result additional monies were misappropriated. In *Fourth Nat. Bank of Tulsa v. Board of County Com'rs,* 186 Okla. 102, 95 P.2d 878 (1939), the surety on a county treasurer's fidelity bond was allowed to recover against a bank that negligently delivered bonds to a county treasurer. As a result of this negligence, there followed *misuse of county funds by the county treasurer* for which the surety made good. And, in *Amer. Surety Co. v. Multnomah County,* 171 Or. 287, 138 P.2d 597 (1943), the corporate surety on a fidelity bond which covered the treasurer of Marion County, Oregon, was allowed to subrogate and bring an action against Multnomah County and the City of Portland for wrongfully receiving and retaining county funds which the Marion County treasurer had used to pay his taxes. The same reasoning has been applied to a surety on a city treasurer's fidelity bond. In *Maryland Casualty Co. v. Cook,* 35 F. Supp. 160 (E.D. Mich. 1940), the surety, after making good on the treasurer's defalcations, was

allowed to recover by subrogation to the city's cause of action against a public accountant who negligently audited the city's books and failed to discover past defalcations, leaving the treasurer in a position to commit subsequent misappropriations.

Kansas has recognized that a county may recover damages from a public accountant who breaks a contract by negligently conducting an audit. In *Allen County Comm'rs v. Baker*, 152 Kan. 164, 167, 102 P.2d 1006 (1940), the Court said:

"The purpose of a county audit is not merely to 'comply with the statute' as the defendants rather indicate in their answer. Its primary purpose—the purpose of the statute itself—is to determine whether the accounts and records of the county are being accurately and honestly kept. When the county commissioners, who are charged with responsibility in the matter, employ accountants to make the audit, they contract for skill, accuracy and fidelity on the part of those who represent themselves as experts in this line of work. If service which measures up to that high standard is not furnished, the breach of the contract is fundamental—it goes to the very heart of the contract. If gross inaccuracies are discovered in the report; if disclosure is made that the accountants have failed to report material facts of serious import, bearing upon questions of efficiency and honesty, the report becomes of little, if any, value. If those employing the accountants cannot rely upon an assumption that the audit and the report have been made with reasonable accuracy and with complete fidelity they have failed to receive the principal thing they were to get under the contract."

We are of the opinion that plaintiff's petition states a cause of action, and the record discloses sufficient evidence to withstand a motion for summary judgment.

Reversed and remanded.