| 57 | 27 |
| 57 | 266 |
| 57 | 608 |
| 57 | 27 |
| 58 | 418 |

THE AMERICAN NATIONAL BANK OF KANSAS CITY, Mo., *et al.*, v. W. T. BRANCH, *as Assignee of the Security Investment Company.*

No. 8490.

1. GENERAL ASSIGNMENT — *Contingent and Secured Claims — Security to be Exhausted First.*  A security company, which had been engaged in negotiating mortgage loans on real estate, and had guaranteed the payment of the interest on the mortgage bonds negotiated, and also the payment of the principal within two years from maturity, made a general assignment for the benefit of all its creditors.   The assignee, upon due notice and a hearing, unconditionally allowed the claims which were unsecured, and where the liability was absolute, and at the same time allowed the claims of those who held the guaranteed mortgage bonds for the whole amount, designating them as contingent claims.   No appeal was taken by any creditor or other person interested from the allowance of the latter claims.   *Held*, that the decision of the assignee in adjusting and allowing such claims was final and conclusive; and *held* further, that the creditors who held the guaranteed mortgage bonds should be compelled first to resort to and exhaust the mortgage securities, and should only be allowed a dividend upon the amount remaining unpaid

National Bank v. Branch.

after exhausting the funds upon which they had a special and exclusive lien.

2. —————— *Procedure to Regulate the Distribution of Assets.* Written motions were filed by certain creditors asking the district court to regulate the distribution of the assets of the estate, and to prevent the misapplication of the funds by the assignee, setting forth a full statement of the facts and asking for specific relief; the motions were verified, and after notice had been given, the assignee and other interested creditors appeared and by testimony and argument resisted the claims of the petitioning creditors. *Held*, that, although irregular, the procedure was a substantial compliance with the requirements of section 37 of the act regulating voluntary assignments. (¶ 379, Gen. Stat. 1889.)

*Error from Mitchell District Court.*
*Hon. Cyrus Heren, Judge.*

MODIFIED.                              OPINION FILED JUNE 6, 1896.

STATEMENT BY THE COURT.

THIS was an application to the district court of Mitchell county by certain creditors to require W. T. Branch, as assignee of the Security Investment Company, to distribute funds of the assigned estate in his hands among them, and to exclude certain other creditors, whose claims had been allowed by the assignee, from participating in the distribution. Testimony was received on the application, from which it appeared that the Security Investment Company, of Cawker City, Kan., was incorporated and began business in 1886, and continued in business until February, 1891, when an assignment was made of all its property for the benefit of its creditors. During its continuance in business the company borrowed large sums of money from various banks and persons, and at the time of its failure it was owing on account of such loans about the sum of $200,000. During the same time it carried on an extensive business in making farm loans throughout northwestern Kansas, some of which extended as long as seven years after

the time they were made.    In transferring most of
these securities the following indorsement and guar-
anty was written thereon :

" For value received, the Security Investment Com-
pany hereby assigns the within bond to ——— or
order, without recourse, save that it guarantees, first,
the prompt payment of interest thereon at 7 per cent.
per annum, payable semiannually, until the principal
is fully paid ; second, the payment of the principal
within two years from maturity :  *Provided*, That if at
any time said Security Investment Company shall
tender to the legal holder of said bond the amount
unpaid thereon with accrued interest, the said holder
shall thereupon indorse and deliver said bond, to-
gether with the mortgage securing the same, properly
assigned to the Security Investment Company ; or,
if he shall elect not so to do, then this guarantee
shall become and thenceforth be null and void.    In
witness whereof, the Security Investment Company
has signed and delivered these presents by its secre-
tary, this —— day of ———.    Signed, Security In-
vestment Company, by V. H. Branch, secretary."

At the time of the assignment the farm loans there-
tofore negotiated and then remaining unpaid amounted
to about $1,000,000.    In due time after the assign-
ment, W. T. Branch was chosen by the creditors of
the company as permanent assignee, and, in pursuance
of a notice duly given, he, on August 3, 1891, proceeded
to adjust all the demands against the estate.    The
claims of the parties from whom the company had bor-
rowed money were allowed, and as evidence of such
allowance the assignee indorsed on the claims presented
the words :  "Allowed on the —— day of ——— ; prin-
cipal ——— ; interest ——— ; total ———," except
that the blanks were all filled to correspond with the
actual day of allowance, the amount of principal al-
lowed, and the amount of interest thereon.    At the

same time' the holders of the negotiated bonds and mortgages presented their claims based on a liability arising under the guaranty hereinbefore recited. There were about 1,000 of these guarantied bonds, amounting to the proximate sum of $971,000, and, upon proofs duly taken by the assignee, they were allowed as contingent claims.   The holders of the same insisted that they were entitled to have them allowed as absolute and direct liabilities, while the other creditors whose claims had been allowed as direct and unconditional liabilities contended that the assigned estate was not liable upon the contingent claims until they had exhausted their security and remedy against the principal obligors under the bonds and mortgages.   The assignee declined to allow them as direct and absolute claims, but did allow them as contingent claims entitling them to participate in the estate to a limited extent.   As evidence of the allowance, he indorsed on the back of each claim the following words : "Allowed on this ——— day of ———, as a contingent claim ; principal, ——— ; interest, ——— ; total, ———," except that each and all of the above blanks were filled properly in each instance to correspond with the dates and amounts found in each case.   A small portion of the claims were allowed as contingent by reason of an obligation on the part of the company of a general guaranty of collection of the debt, and also a small portion of the claims allowed as contingent were based upon the ordinary indorsement of the company, demand, notice and protest being waived. At the time of the assignment a small portion of the bonds and mortgages had matured, but much the greater portion of them had not matured, except the interest, and, at the time of proving up the claims, the greater portion of those allowed as contingent had

accrued interest thereon then due and unpaid, which was included in the allowance by the assignee.

No appeals from the decision of the assignee, so far as pertains to the claims involved in this proceeding, were taken, and when the proceeding was instituted the time for appeals in each and all the cases had long since passed. When the application was made for the distribution of funds, there was in the possession of the assignee the sum of $25,776.21 over and above the amount claimed by the assignee for salary and expenses. It appeared from the report of the assignee that about $450,000 of the contingent claims against the estate had been paid off in full by the principal obligors and securities, and that the liability of the company at the time of the hearing of the claims proved up before the assignee, after deducting those that had been paid, was about $800,000.

Upon these facts the district court, as conclusions of law, held that the determination of the assignee in the allowance of claims, being unappealed from, was conclusive upon the district court, and amounted to an adjudication that the company was liable upon all the allowed claims, whether direct or contingent; that each and all the creditors were entitled to a *pro rata* distribution of the fund, except such creditors as had been paid in full since the proving up of their claims, and except, also, such creditors as had been paid an amount since the proving up of their claims, if any, which would reduce the claims below the amount of the distributed share; and that such creditors, if any, were entitled to a payment of such amount, and such amount only, as would discharge the indebtedness to them in full. The court then ordered the assignee to reserve for claims in litigation and the cost attending the same the sum of $5,776.21, and directed that the

sum of $20,000 be distributed among the creditors in
the ratio and according to the rule which had been
adjudged.   The American National Bank of Kansas
City, Mo., and 12 other creditors complain of these
rulings, and bring them up for review, naming as de-
fendants in error W. T. Branch, assignee, etc., The
American Loan & Trust Company, and all others
named in the application in the court below as con-
tingent claimants.

*Ellis & Cook*, for The American National Bank.

*Pulsifer & Alexander*, for The Moshannan Banking
Company *et al.*

*A. H. Ellis*, and *F. T. Burnham*, for The National
Bank of Redemption.

*D. M. Thorp*, for defendant in error W. T. Branch,
assignee.

*Waters & Waters*, and *V. H. Branch*, for defendants
in error other than assignee.

The opinion of the court was delivered by

JOHNSTON, J. : The right to a review of the rul-
ings made by the district court is challenged at the
outset by the defendants in error, because a great
many of the claims that were allowed before the trial
were for sums less than is required to give this court
jurisdiction.   The estate is an entirety, and its value
greatly exceeds the jurisdictional amount.   It affirm-
atively appears that each of a large number of the
claims is more than $2,000 ; but whether large or
small, the claimants were all interested in the trust
fund, and a final disposition of the case requires that
all should be brought in.   The rulings made as to
the distribution, therefore, are subject to review, al-
though the claims of some who were seeking to share

in the fund may have been very small.　(*M. K. & T. Rly. Co. v. Haber*, 56 Kan. 694.)

The next contention is that the proceeding was not properly instituted. It is said that no petition was filed, no summons or citation was ever issued or served, that no answer was ever made, and no issues formed by pleadings. The applications of the plaintiffs in error were denominated "motions," and contained a full recital of the facts, and an explicit statement of the relief asked. These motions were verified, and notice of the time of hearing was given to the assignee, who appeared in person and by attorney, resisting the application. The parties whose claims had been allowed and designated as "contingent," appeared in person and by attorneys at the hearing, contending that they should not be excluded from a share in the estate, and insisting that they were entitled to a *pro rata* distribution of the assets with all other claimants.

In the matter of the allowance and classification of claims the district court can only acquire jurisdiction to review and supervise the action of the assignee through a proceeding by way of appeal;

1. Appeal necessary for review.

but in respect to the condition and distribution of the assets of the estate jurisdiction may be acquired upon the petition of a creditor or other person interested in the estate; and if the petition contains good cause, and is verified by affidavit, the court may cause the assignee to be cited before it to answer the allegations of the petition, and abide any order that may be made by the court in the premises, and upon the hearing the court is authorized to make such order as may be deemed fit and lawful for the enforcement of the statutory provisions concerning assignments. (¶ ¶ 376–378, Gen. Stat. 1889.)

Although the applications in the present case were designated as motions, there was a substantial compliance with this provision of the statute, and the assignee, having appeared upon the notice as it was served, the failure to issue a formal citation is no longer important. Although no answer was filed, issue was in fact joined; and all the parties being before the court, and having had a full hearing, the same as if petition and answer had been regularly filed, it is too late to raise any question as to the manner in which the issue was joined. The district court, however, could not in this proceeding modify or change the decisions made by the assignee in adjusting and allowing claims. In this respect the assignee had full jurisdiction, and his decisions were final where no appeal was taken in the manner provided by law. He was duly appointed and qualified, a time was fixed by him for adjusting and allowing claims against the estate, and due notice of the same was given to all concerned. The claims presented were based on the contingent liabilities of the company, and upon proof offered the claims were allowed. Undoubtedly he had jurisdiction to adjust and allow claims, and within that jurisdiction his decision, in the absence of an appeal, is final, "unless a creditor or some other person interested has, after a decision is made on any such claim, asked an appeal therefrom." (¶ 365, Gen. Stat. 1889 ; *The State v. Kansas Ins. Co.*, 32 Kan. 655; *Limbocker v. Higinbotham*, 52 id. 700.) The plaintiffs in error could have taken an appeal from the decisions of the assignee in allowing what are called the "contingent claims," but, failing in this, they are concluded from questioning the allowance or classification which he made. Whether his determination was right or wrong we

Opinion of the Court.

will not now decide, as the question is not open for our consideration. The assignee did not undertake to prescribe how or when the distribution of the assets should be made.· It is evident from the language used when the decision was made that he contemplated that a portion, at least, of the contingent claims would be paid by those who were primarily liable for them, or would be made out of the mortgage securities, and evidently he thought that dividends would only be paid upon the amount remaining after the original securities had been exhausted. The distribution, however, was left to the district court, and that court, when its jurisdiction was invoked, was competent to interpret the decision of the assignee and make out such order in the premises as would be legal and just.

The assets of the estate should be distributed upon equitable principles, and it is a recognized rule of equity that where there are two funds to which a creditor can resort, and other creditors are limited to one of them, the former will be compelled to exhaust the fund upon which he has an exclusive lien, and will be permitted to resort to the other for the deficiency only. (*Burnham v. Citizens Bank*, 55 Kan. 545; *Gore v. Royse*, 56 id. 771; *Wurtz, Austin & McVeigh v. Hart*, 13 Iowa, 515; *Knowles, Petitioner*, 13 R. I. 90; *Besley v. Lawrence*, 11 Paige Ch. 581.) While the assignee allowed the claims of those who held the guarantied mortgage bonds to the full amount, payment of a part of the debts will certainly be realized from the mortgage securities. It would be inequitable to allow these claimants a *pro rata* dividend on the whole amount of their claims when payment of a part, if not all, of it may be received from the mortgage securities to which they have the exclusive right. It is suggested that, as

2. Security must be exhausted first.

these mortgages were taken for five and seven years, a considerable time will elapse before the amount of the indebtedness can be accurately known, and before dividends can be declared. It is unnecessary to postpone the payment of any dividends until it is known how much can be realized on the mortgage securities. The court can approximately determine from information that will be obtainable how large a share of the funds of the estate should be reserved for the payment of the claims of those who hold mortgage securities. The balance may be paid out in dividends from time to time, as it is collected, to the remaining claimants. A distribution may be made among those holding the mortgage securities when they have exhausted their special liens, and then dividends should be declared upon the amount remaining unpaid, and not upon the full amount of the claims as allowed.

To this extent the judgment of the district court will be modified.

All the Justices concurring.