No. 38,589
No. 38,620

In the Matter of the Receivership of The Concordia Mercantile Company, BERTHA I. BOLMAN, individually, and BERTHA I. BOLMAN, as executrix of the last will and testament of Donald E. Bolman, Deceased, *Appellants,* v. THE COMMERCIAL NATIONAL BANK OF KANSAS CITY, KANSAS, and BELDON BOWEN, Receiver of The Concordia Mercantile Company, *Appellees.*

(244 P. 2d 1175)

Opinion filed June 7, 1952.

*Charles A. Walsh,* of Concordia, argued the cause and was on the briefs for the appellants.

*P. B. McAnany,* of Kansas City, argued the cause, and *Edwin S. McAnany, Thos. M. Van Cleave, Willard J. Phillips* and *Thomas M. Van Cleave, Jr.,* all of Kansas City, and *Clarence Paulsen,* of Concordia, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: The present appeals arise from an order of the district court allowing claims against the receiver of an insolvent corporation, as more fully set out later.

Generally speaking, the contentions made by the appellants and by the appellee are of law, and no attack is made on the voluminous conclusions of fact made by the trial court. From those conclusions, as finally framed, the following is deduced.

For many years the Concordia Mercantile Company of Concordia, Kan., hereafter referred to as the company, and of which Donald E. Bolman was president, financed its operations by borrowing from the Commercial National Bank of Kansas City, Kan., hereafter referred to as the bank. On various dates between May 14, 1948, and July 28, 1948, the company executed to the bank sixteen notes for a total of $107,596.17. These notes were also signed by Donald E. Bolman, Bertha I. Bolman, William G. Bolman and Martha K. Bolman. The trial court found as a fact that as between these individuals and the bank, they were primarily liable but that their relation to the company was that of sureties and accommodation makers.

On September 25, 1948, Donald E. Bolman and Bertha I. Bolman, to further secure all of the above notes, pledged to the bank 105 shares of stock in another corporation, and, under the terms of the pledge, the bank on August 16, 1949, sold the stock for $26,250, which sum it held in the form of a cashier's check without application on the indebtedness. On September 25, 1948, Bolman deeded to the bank certain real estate in Lawrence, Kan., subject to a certain life estate. The trial court found this deed was a mortgage, and that the net value of the security was $5,385.

Prior to the appointment of a receiver, as later mentioned, the company was in charge of a liquidating agent and from assets in his hand a dividend of twelve percent was arranged to certain creditors, including the bank and Donald E. Bolman and Bertha I. Bolman. The bank commenced an action to recover on a note of $5,000, dated May 20, 1948, and had garnishment process to appropriate the dividends due Donald E. Bolman of $2,546.09, and the dividend due Bertha I. Bolman of $769.20, or a total of $3,315.29. It is here noted that after the receiver was appointed, he was directed to pay these sums to the bank, and the further sum of $2,543.67 to complete

payment of the judgment, in order to facilitate administration, but reserving judgment as to the effect of such payment. No part of this note was included in the claim as finally allowed the bank.

In an action filed in the district court of Cloud county, by the company, a receiver was appointed on July 27, 1949, and in due time the bank filed its claim based on the sixteen notes held by it, setting up in detail the date and amount of each note, credits thereon, and the interest due to the date of appointment of the receiver, showing a balance due from the company to the bank of $78,591.31. Its claim also stated the facts as to the sale of the pledged stock and that it held the $26,250 as well as to the action on the $5,000 note and the amounts covered by the garnishment proceedings.

Although not shown by the abstract, at some date Donald E. Bolman and Bertha I. Bolman filed claims. Donald E. Bolman died April 14, 1950, and under proper proceedings Bertha I. Bolman was appointed as executrix of his will. At some undisclosed date subsequent to April 15, 1950, she filed amended claims on her own behalf and as executrix. Both of these amended claims are long and recite the history of the Bolman transactions before and after the receiver was appointed and in effect contend that the $26,250 held by the bank should be applied to its claim against the company; that the garnishment moneys should be applied to the credit of the company and that the value of the Lawrence property should be credited on the company's indebtedness. In Bertha I. Bolman's individual claim she further asserted the company was indebted to her in the sum of $6,000 and interest, by reason of a sale of real estate; that she was the owner of forty-four of the 105 shares of the stock pledged to the bank, and that she was entitled to be subrogated to the rights of the bank. She also pleaded that on November 2, 1949, she and her husband had assigned to Charles Walsh, as security for his fees and expenses, all of their right, title and interest in and to their claims against the company. Allegations as to the right of her husband's estate to subrogation will not be detailed. She claimed the sum of $6,447 and that if her claim of subrogation be denied for an additional sum, predicated on her alleged share of the pledged stock and the value of the mortgaged real estate, in the amount of $16,385, or a total of $22,832. In her claim as executrix Bertha I. Bolman pleaded the company was indebted to Donald E. Bolman on a note of $19,400 and interest and for salary due him

of $3,000, made her claim as to application of moneys and of subrogation, and in addition to the assignment to Walsh that other assignments had been made of the claims of her husband and herself against the company to a building and loan association as security for a loan on their homestead and to a Kansas City, Mo., bank as security on an indebtedness secured by life insurance policies.

As to the claimants and amounts due, the trial court found the amount due to the bank to be $73,060.51, the amount due to Bertha I. Bolman to be $5,678.80, and the amount due to the estate of Donald E. Bolman for notes to be $21,307.51, for salary $3,000, less the amounts garnished of $2,546.07, or a balance of $21,761.42, and that he was indebted to the company in the sum of $5,006.09. Other claims are not in dispute and need no mention here.

The trial court further found that the receiver had in his hands the sum of about $34,000 in cash and some assets yet to be converted into cash. It further found that the proceeds from the property pledged to the bank, together with its pro rata share of the assets subject to distribution would not be sufficient to pay in full the debt to the bank on which its claim was based.

As matters of law the trial court concluded that the facts did not show such relationship of either Bolman to the assets in the hands of the receiver as to entitle either of them to claim credit for payments made to the bank out of the assets of their personal estates; that they were not entitled to claim by way of subrogation any benefits such as the right to have the bank charged with any sum on account of payments made by them and themselves subrogated to such extent and with the right to claim dividends in the receivership on account thereof; that the notes held by the bank were separate and distinct obligations, one not being dependent on the other; that the Bolmans were sureties and accommodation makers on all of the obligations of the company held by the bank, and gave as security the corporation stock and real property in Lawrence, and until the obligations of the company to the bank were paid in full no right of substitution or of subrogation accrued to them, that the fact the Bolmans were primarily liable on all of the obligations to the bank defeated any right of subrogation on their part, and which otherwise might be theirs to assert; and that the several claimants were entitled to share in the distribution later to be ordered. The trial court further concluded:

"8. The fact that said Bolmans were accommodation makers and sureties for the Concordia Mercantile Company on the note obligations held by said

Commercial National Bank, does not place them in an equitable position, or entitle them to any peculiar equities. As to the assets of said Company and the distribution thereof among creditors, said Bank can rightfully claim dividends on its claim, the same as if no payments had been received from such sureties and accommodation makers. This is true also, in view of the fact that said bank will not receive payment in full of its claims from all sources."

And that distribution should not be ordered at the time owing to the unsettled condition of the assets. At a later date the trial court filed additional conclusions of law which recite:

"1. Claimant, The Commercial National Bank of Kansas City, having received $26,250.00 as to proceeds of the sale of stock of the D. E. Bolman Mercantile Company pledged to it as security for the payment of the note claims held by it and asserted as claims against the Concordia Mercantile Company in the hands of the Receiver, is not required, as a matter of law, to credit the same upon any of the obligations held by it, as a condition to or in diminution of its said claims, as against said receivership. It may thus present and have its claim allowed in full without reference to such payment.

"2. The same result obtains, as a matter of law, with reference to the Lawrence, Kansas, property pledged as security for the payment of the indebtedness held by said Bank."

On August 16, 1951, the trial court entered judgment on its conclusions that the following named creditors have judgment for the following amounts:

| "Name | Amount |
|-------|--------|
| The Commercial National Bank of Kansas City | $73,060.51 |
| Estate of Donald E. Bolman, deceased | 19,301.42 |
| Bertha I. Bolman | 5,678.80 |
| Blanche Sorrell | 1,804.24 |
| State of Kansas | 100.00 |
| F. D. Bolman, Trustee | 4,654.33 |
| Biddle Purchasing Company | 13.39 |
| Chase Candy Company, Inc. | 759.21" |

and that the assets should be distributed in proportion to the claims. Other details for payment and other provisions of the judgment are unnecessary to disposition of the appeals.

The motions of Bertha I. Bolman individually and as executrix to set aside certain conclusions of law and for a new trial were denied.

Later the trial court denied the motion of the bank to correct the journal entry of judgment to show that the amount of the estate of Donald E. Bolman should be $16,755.33 as found by the conclusions of fact, and not $19,301.42 as stated in the journal entry.

In due time Bertha I. Bolman individually and as executrix per-

fected her appeal from the rulings adverse to them. Although designated as an appellee, the receiver has filed no brief here and it is apparent he has no interest in this appeal. The bank, referred to on occasion as appellee, perfected its cross-appeal from the ruling on its motion to correct the journal entry of judgment.

In presenting their contentions the trial court erred, appellants state three general contentions which will be discussed.

1. The first contention is that when an insolvent estate is being administered by a receiver the creditors of the debtor shall share in the available assets in proportion to their respective claims. They direct attention to G. S. 1949, 44-312, providing that whenever a receiver is appointed of the estate of any corporation, certain wages of laborers or employees shall be preferred, and deduce therefrom that all other creditors are equal; to G. S. 1949, 60-1301, providing that in every voluntary assignment in trust for creditors the creditors shall benefit in proportion to their claims, and make a similar deduction. They also direct attention to the rule in decedent's estates set forth in the probate code ( G. S. 1949, 59-1303) that when a claimant holds security his claim may be allowed if he surrenders his security, or he may exhaust the security and claim for the balance. They pass over the fact the security must have been a part of the assets of the decedent. Upon the above premise they present a general argument that any creditor holding security must exhaust it before he may look to the general assets of the insolvent estate. They also present some authorities that where a note is signed by two persons, one of whom signs to accommodate the other, the relation of principal and surety arises, and specifically to *Blitz v. Metzger*, 119 Kan. 760, 241 Pac. 259 (rehearing denied 120 Kan. 555, 245 Pac. 161), holding that the fact two persons are primarily liable to the holder of a promissory note does not prevent one of them, after the note is paid, from maintaining an action against the other maker to establish that he is a surety for the other and to be subrogated to the right of the holder in other securities, rights and remedies which he might have for the collection of the debt. The general rules thus presented are correct, but their application to the facts will be later discussed.

2. Directing attention to the fact that the bank had converted into money the corporate stock pledged by Donald E. Bolman and Bertha I. Bolman, to secure payment of the company's notes to the bank and the proceeds of which, amounting to $26,250, had not been credited on the company's notes, appellants next contend that

the trial court erred in not reducing the amount of the bank's claim by $26,250, and in not increasing the Bolman claims by that amount. It is to be borne in mind that when the receiver was appointed the corporate stock had not been sold, but that a sale was had thereafter but before the bank filed its claim in which a full disclosure was made. What is hereafter said about the corporate stock is in principle applicable to the Lawrence real estate security, and it will not be mentioned further.

Appellants contend that as against the insolvent estate the trial court should have applied the so-called bankruptcy rule that a creditor claimant shall be allowed to prove his claim only for the balance remaining after deducting the value of any collateral securities he may hold, citing *First Am. Bank & Trust Co. v. Town of Palm Beach,* 96 Fla. 247, 117 So. 900, 65 A. L. R. 1398, and the dissenting opinion in *Merrill v. National Bank of Jacksonville,* 173 U. S. 131, 43 L. Ed. 640, 19 S. Ct. 360, and that it·erred in applying the so-called equity or English chancery rule that a creditor claimant may prove his claim in full without regard to the existence of any collateral, a rule followed in *Merrill v. National Bank of Jacksonville,* supra. Appellants also direct attention to an annotation in 94 A. L. R. 468, and others therein mentioned, on the treatment of collateral by a creditor of an insolvent or bankrupt, in which the above rules are referred to and many authorities cited. On the premise so laid, appellants direct attention to and rely almost wholly on *National Bank v. Branch,* 57 Kan. 27, 45 Pac. 88, and the companion case of *Investment Co. v. National Bank,* 58 Kan. 414, 49 Pac. 521, both of which arose from the same proceeding. Appellants argue that in these cases we followed the so-called bankruptcy rule, and that in later cases we have not disapproved that holding.

Extensive review of the above cases is not necessary. Generally speaking, in the Branch case one class of creditors was made up of those who had loaned moneys without security to the investment company, which made an assignment for the benefit of creditors, the other class constituting those who had purchased notes secured by real estate mortgages, the assignment of the notes and mortgages carrying certain guaranties of payment by the company, and who sought to prove up their claims without exhausting their mortgage security. In the course of the opinion it was stated that the assets of the insolvent estate should be distributed on an equitable basis, and that it was a recognized rule of equity that where there were

two funds to which a creditor could resort, he would be compelled to exhaust the fund upon which he had an exclusive lien and permitted to go to the other fund for the deficiency only. For our purposes the syllabus reads:

"A security company, which had been engaged in negotiating mortgage loans on real estate, and had guaranteed the payment of the interest on the mortgage bonds negotiated, and also the payment of the principal within two years from maturity, made a general assignment for the benefit of all its creditors. . . . *held* further, that the creditors who held the guaranteed mortgage bonds should be compelled first to resort to and exhaust the mortgage securities, and should only be allowed a dividend upon the amount remaining unpaid after exhausting the funds upon which they had a special and exclusive lien." (Syl. ¶ 1.)

Appellee contends that appellants are seeking to compel a marshalling of assets, a doctrine followed in *National Bank v. Branch,* supra, but that the doctrine has no application under the facts of this case. Without an elaborate discussion, it may be said that the doctrine is that where a creditor has a lien on two funds in the hands of the same debtor and another creditor has a lien on only one of them, equity will compel the former to collect his debt out of that fund in his hands to which the latter cannot resort. The doctrine is an equitable one applicable only where both funds are in the hands of the common debtor of both creditors and where it can be applied with justice to all concerned, and will be applied only when that can be done without prejudice to the paramount creditor. (See 55 C. J. S. pp. 956, 958, 962, 966, and 35 Am. Jur. pp. 385, 387, 389.) In *Merrill v. National Bank of Jacksonville,* supra, it was said that an unsecured creditor had no equity to compel a creditor holding collateral to apply it before enforcing his direct remedy against the common debtor.

In the case before us it appears that there was only one fund, and not two, in the hands of the receiver. It is clear also that no creditor of the company, other than the bank, had any right whatever to look to the proceeds of the corporate stock pledged by the Bolmans to the bank, for the satisfaction of his claim, and that the rule of marshalling assets as applied in *National Bank v. Branch,* supra, has no application here.

And further, in our opinion, it is implicit in the authorities relied on by the appellants, and clearly appears in the Branch case, that the insolvent debtor gave to one creditor collateral security which, except for the pledge, unsecured creditors might have looked to for satisfaction and which they had the right to insist should be applied

to the satisfaction of the unsecured claim, so far as might be, before such secured creditor could prove his claim for any balance due him. In the present case the pledged corporate stock was never an asset of the company. It is true, as appellants argue, that as between them and the company, they stand in the relation of sureties. It is also true that sureties are favorites in the law and their property is to be appropriated for their principal's debt only when the principal's assets are exhausted. Were they not jointly liable on the company's notes, they undoubtedly would insist that such principles of law be followed. But insofar as they are concerned, they are liable on such notes, and they are likewise creditors, and as such seek as large a distributive share of the insolvent estate as possible, so that by reason of assignments made it may be applied to the satisfaction of claims against their exempt property held by creditors who are not creditors of the insolvent company. This is not an action by the bank against the appellants on the notes on which they are comakers—it is a proceeding to establish claims against the insolvent company. In equity, the appellants are not entitled to use the proceeds of their collateral to decrease the bank's claim against the insolvent company—to allow that to be done would be to penalize the bank by depriving it of the very purpose for which the collateral was pledged. If the dividends to be paid by the receiver were of such amount that they, with the proceeds of the collateral, were more than sufficient to pay the notes making up the bank's claim, of course the appellants would be entitled to any surplus, but the court's conclusion, to which no objection was made and which is in no wise attacked, is that the total proceeds of dividends and of collateral will not pay the indebtedness to the bank. The appellants' contention that appellee's claim should be reduced in the amount of $26,250 and that their claim should be increased by that amount cannot be sustained.

3. The last contention of the appellants is that having furnished the collateral which was sold for $26,250, they are entitled to be subrogated to that extent of the bank's claim against the insolvent company. As a preliminary to their argument, appellants inject an aside which we notice briefly. By a process of addition they have discovered that the total due on seven of the sixteen notes set forth in the bank's claim is substantially $26,250 and they argue that the sale of the collateral paid the particular notes and that this court should direct that credit be given. As has been stated, there was

no such application of proceeds made by the bank. In the claims filed by appellants no such question was presented, nor did the trial court make any conclusion of fact to that effect. The fact the amounts are substantially the same is only a coincidence. We hold the particular contention is not good. On the general question of subrogation, appellants rely wholly on *Blitz v. Metzger,* supra, where the controversy was between two joint makers of a note and where one maker claimed to be surety for the other, and they quote extensively from that part of the opinion (l. c. 766) distinguishing the facts from those considered in *Spire v. Spire,* 104 Kan. 501, 180 Pac. 209, where the contention was between one of two makers and the holder of a note. Reference is made to the case for a discussion of the doctrine of subrogation. On the facts the case is clearly distinguishable from the one at bar, but on the question of who is entitled to subrogation the court held:

"A creditor is entitled to full payment of his debt before subrogation by a surety can be invoked. When the principal had other obligations to the creditor for which he has the securities in question, a surety's right of subrogation does not accrue until (1) he pays the debt of his principal, and (2) his principal is no longer indebted to the creditor upon such securities." (Syl. ¶ 5.)

Appellee relies on *Spire v. Spire,* supra. Reference is made to the opinion for a complete statement of facts, but in substance a father signed notes with his son for the son's benefit in the purchase of farm machinery from the defendant company. The administrator of the father's estate paid some of the notes and then brought an action against the son and the company, which held security for the notes paid and other notes, for reimbursement and for subrogation to the security held by the payee. The court held:

"The maker of a promissory note, in fact surety for his comaker, is not entitled, on paying the note, to be subrogated to chattel security held by the payee, to the prejudice of other liens on the chattel held by the payee to secure other obligations of the comaker." (Syl.)

Without exhausting the subject, it may be said also that the general rule is that a person is not entitled to be subrogated to the rights of a creditor until the claim of the creditor has been paid in full. See 50 Am. Jur. 701, and 60 C. J. 719.

In the case before us there is no claim the bank has been or will be paid in full. Under the facts and the law, the appellants are in no position to have the doctrine of subrogation invoked in their favor. Insofar as the appellants are concerned, it has not been made to appear that the trial court erred in fixing the amount of the claim

of the appellee bank or of the claims of the appellants against the insolvent company.

We come now to the cross-appeal of the bank, that the trial court erred in overruling its motion to correct the journal entry of judgment insofar as it fixed the claim of the estate of Donald E. Bolman at $19,301.42. Although mentioned briefly in the statement of facts heretofore given, the trial court found in connection with the bank's action against the Bolmans on the $5,000 note that a dividend of $2,546.09 payable to Donald E. Bolman by the liquidating agent acting prior to the receivership had been garnished and applied to the satisfaction of the judgment on the note, and that after the receivership, the court had directed the receiver to pay the further sum of $2,543.67 to satisfy the judgment, but reserved judgment as to the effect of the latter payment. No part of this note was included in the allowance of the bank's or Bolman's claims. As concluded by the trial court, the company was indebted to Donald E. Bolman for notes amounting to $21,307.51, and for salary amounting to $3,000, or a total of $24,307.51, less the dividends garnished of $2,546.09, or a balance of $21,761.42. This finding was never specifically changed. As originally concluded, Donald E. Bolman was indebted to the company in the aggregate sum of $5,006.09, which was to be offset against future dividends. This latter conclusion was twice corrected, but finally stated that "Donald E. Bolman was indebted to the Concordia Mercantile Company at the time of the appointment of a Receiver herein, on account of a note held by it and an account due and owing from him, in the aggregate sum of $5,006.09, which is to be offset against the total claim of $24,307.61 held by his estate, . . . leaving the balance due his estate, the sum of $19,301.42." The bank's contention, simply stated, is that the trial court, having at first concluded that the garnished sum of $2,546.09 should be credited on Donald E. Bolman's claim against the company of $24,307.51, erred in its journal entry in not deducting that amount from the amount therein fixed. Appellants do not assist us beyond stating the garnished amount never came into the hands of the receiver. It is rather clear from the record that Donald E. Bolman did not include in his claim the amount of the garnished dividends and that it was not included in the total amount found due him. The garnishment pertained to the $5,000 note mentioned, it has been satisfied, formed no part of any claim allowed, and we fail to see where Donald E. Bolman should have his claim reduced on account thereof.

In our opinion, when the trial court made its final conclusion of fact the effect was to amend all prior inconsistent findings even though not specifically mentioned. We discern no error insofar as the cross-appeal is concerned.

The judgment of the trial court is affirmed.