(803 P.2d 1049)

No. 65,170

FARMERS STATE BANK OF INGALLS, KANSAS, *Appellant*, v.
MICHAEL J. FRIESEN, *et al.*, *Appellees*.

Opinion filed December 28, 1990.

*Philip Ridenour*, of Ridenour and Knobbe, of Cimarron, for the appellant.

*Phyllis F. Wendler*, of Friesen & Wendler, P.A., of Garden City, for the appellees Michael J. Friesen and Lydia Kay Friesen.

*Robert R. Johnson* and *Jon R. Craig*, of Law Office of Jon R. Craig, of Garden City, for the appellee Pauline Rains.

Before BRISCOE, C.J., GERNON, J., and JANICE D. RUSSELL, District Judge, assigned.

RUSSELL, J.: The Farmers State Bank of Ingalls, Kansas, (Bank) appeals the district court's order dismissing its claims against defendants Michael Friesen and Pauline Rains. The order in question was based upon the court's interpretation of K.S.A. 59-1303. For the reasons set out herein, we reverse.

Although not disputed, the facts are somewhat complex. Prior to October 1986, the Bank had loaned money to Gilbert Rains, Pauline Rains, and Michael Friesen at various times in various amounts. Gilbert and Pauline were husband and wife and Michael

was Pauline's son. The Bank and these three individuals had ongoing creditor-debtor relationships.

On October 15, 1986, four promissory notes were signed. Three were signed by Michael, Gilbert, and Pauline as comakers: No. 3001 in the amount of $78,614.36; No. 3003 in the amount of $124,999.04; and No. 3004 in the amount of $89,237.92. The fourth note, No. 3002, in the amount of $39,307.18, was signed by Michael and Pauline but does not appear to have been signed by Gilbert, although his name appears typed on the note as a comaker. The parties have treated the fourth note as having been executed by Gilbert, although the record is not clear as to the reason.

In addition to the four notes executed in October 1986, Michael signed a fifth note on April 28, 1987, in the amount of $10,000. Although he alone signed this note, both in his individual capacity and as president of Blue Mountain Investments, Ltd., Gilbert and Pauline were also obligated because of an unlimited continuing guaranty they had signed in January 1986 that guaranteed all loans made by the Bank to Michael.

As partial security for the four notes executed in October 1986, each of the three borrowers gave second mortgages to the Bank on separate tracts of land; Gilbert on land in McPherson County in his separate name, Pauline on two quarter sections in Finney County in her separate name, and Michael on a partial quarter section in Finney County and three lots in Garden City which he owned either in his separate name or jointly with his wife Lydia. In addition to the real estate mortgages, a security interest in shares of stock of Krause Plow Corporation, Inc., owned by Pauline individually, was pledged to the Bank.

Gilbert died March 27, 1987, and his estate is in probate in Reno County. As of the date of his death, none of the four notes dated October 1986 had been paid. The Bank filed a claim against Gilbert's estate for $342,396.05, the total amount of principal and interest owed on the four notes. The demand did not include the fifth note signed by Michael individually. The district court of Reno County entered an order allowing the demand in full on February 3, 1988. The Bank was ordered to release its mortgage on the McPherson County real estate owned by Gilbert pursuant to K.S.A. 59-1303, which provides:

"When a claimant holds any security for his or her demand, it may be allowed, conditioned upon the claimant surrendering the security or upon the claimant exhausting the security; it shall be allowed for the full amount found to be due if the security has been surrendered, or for any remaining amount found to be due if the security has been exhausted."

In accordance with the court's order, the Bank released its security interest in the McPherson County real estate. To date, nothing has been paid on the four notes. The amount due now exceeds $460,000, including interest. Gilbert's estate is still in probate.

On December 5, 1988, the Bank began foreclosure proceedings against Pauline's and Michael's stock and real estate pledged as security for the four notes. The Bank also filed suit to collect on the fifth note signed by Michael. Pauline and Michael filed motions to dismiss, alleging 59-1303 mandated that the security pledged as collateral be released along with the collateral belonging to Gilbert's estate. The district court granted the motions, dismissing the Bank's petition in its entirety. The dismissal included the foreclosure proceedings, the Bank's request for personal judgments against Pauline and Michael on the four notes, and also the request for judgment against Michael on the fifth note.

The question presented in this case is one not previously directly answered by the courts of this state: Does K.S.A. 59-1303 require the release of all security for a debt which has been allowed in a decedent's estate when part of the security was pledged by comakers, or does it require the release of only that security which forms a part of the decedent's estate?

The Bank contends 59-1303 requires the surrender and proper release of only that security which forms a part of a decedent's estate if the Bank elects not to exhaust the security. The Bank argues that a creditor is still free to pursue remedies against comakers of a note executed jointly with a decedent, including foreclosure on security pledged by comakers.

Defendants base their argument upon the phrase "any security" in the statute, arguing that phrase means all security pledged for a loan allowed as a claim against a decedent's estate, whether owned by the decedent or a comaker. Defendants cite no law,

either in Kansas or any other jurisdiction, in support of their position.

We are persuaded that proper interpretation of 59-1303 would limit its scope to require the release of only property within the decedent's estate. "The fundamental rule of statutory construction is that the intent of the legislature governs. [Citation omitted.] When construing a statute, a court should give words in common usage their natural and ordinary meaning. [Citation omitted.]" *Hill v. Hill,* 13 Kan. App. 2d 107, 108, 763 P.2d 640 (1988).

In K.S.A. 59-1303, the natural and ordinary meaning of "any security for his or her demand" is limited to security interests in property that is part of the decedent's estate. The "demand" is against the estate and there is no apparent reason why the legislature should have drafted the statute to operate on property outside the estate.

"It is the duty of the court to reconcile different statutory provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.] General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling. [Citation omitted.]" *Kansas Racing Management, Inc. v. Kansas Racing Comm'n,* 244 Kan. 343, 353, 770 P.2d 423 (1989).

K.S.A. 59-1303 is only one section of Article 13 of Chapter 59. Article 13 is captioned "Classification and Payment of Demands." K.S.A. 59-1301, which establishes the priority for payments of demands against an estate, provides: "If the applicable *assets of an estate* are insufficient to pay in full all demands allowed against it, payment shall be made in the following classified order: . . . ." (Emphasis added.) K.S.A. 59-1304, the section immediately following the section in question in this case, provides: "When any *assets of the estate* are encumbered . . . ." (Emphasis added.)

The entirety of Article 13 deals with debts and assets of a decedent's estate and how the debts should be satisfied from the assets of the estate. Read in isolation from the rest of the article, the meaning of "any assets" is not crystal clear. However, read in context with the remainder of Article 13, it is plain that the legislature intended to require release of only those assets within a decedent's estate and did not intend to reach out to property

not within a decedent's estate, conferring a boon on surviving comakers.

This interpretation of 59-1303 is also in harmony with other provisions of Kansas law. K.S.A. 16-104, the familiar rule of joint and several liability codified in Kansas without amendment since 1868, provides: "In all cases of joint obligations and joint assumptions of copartners or others, suits may be brought and prosecuted against any one or more of those who are so liable." Comakers of notes are jointly and severally liable on the loans they have taken. To hold that 59-1303 bars a creditor from proceeding against a joint debtor of a decedent, against whose estate a claim has been allowed (but not satisfied), would have the effect of nullifying the concept of joint and several liability when one comaker of a note dies. We do not believe that the legislature intended this effect when it enacted 59-1303.

Although Kansas appellate courts have never addressed this precise issue, dictum in one existing case supports our interpretation of the statute. In *Bolman v. Commercial National Bank*, 173 Kan. 155, 244 P.2d 1175 (1952), the court was considering claims filed against a commercial receivership. It drew an analogy to claims against a decedent's estate:

"They also direct attention to the rule in decedent's estates set forth in the probate code (G.S. 1949, 59-1303) that when a claimant holds security his claim may be allowed if he surrenders his security, or he may exhaust the security and claim for the balance. They pass over the fact *the security must have been a part of the assets of the decedent.*" 173 Kan. at 160. (Emphasis added.)

Defendants argue strenuously that, to allow the Bank to proceed against them, even after its claim has been allowed against Gilbert's estate, will permit the Bank to "double dip." They argue the Bank could collect twice for the same debt—against Gilbert's estate and then against defendants. This argument ignores the effect of K.S.A. 60-2413, which establishes the right of one obligor to seek contribution from his joint obligors. In the event the Bank entirely satisfied its claim from the assets of the estate, the estate could seek contribution of pro rata shares from Pauline and Michael. Conversely, if either of them satisfied the debt, he or she could seek pro rata contribution from the estate.

Finally, public policy dictates that interpretation of 59-1303 be restricted to assets of the decedent's estate. To hold that the statute requires the release of assets not owned by the decedent would not protect a decedent's estate or its creditors, which is the policy behind the statute. Rather, it would injure a creditor and confer no correspondent benefit to the decedent's estate. Such a result would be detrimental to the policy of the statute.

Defendants also argue that the Bank's choice to submit its claim against Gilbert's estate constitutes an election of remedies which bars the Bank from proceeding against Pauline and Michael. There is no support for this position in Kansas law.

"An election [of remedies] is required only when claims are inconsistent, such as where one claim alleges what the other denies, or the allegations are mutually repugnant." *Equitable Life Leasing Corp. v. Abbick*, 243 Kan. 513, 515, 757 P.2d 304 (1988). In this case, the Bank's claims against Pauline and Michael are not only consistent with its claims against Gilbert's estate, they are guaranteed by 16-104.

In this connection, it should be noted that 59-1303 does not require the release of liability. It only requires the release of security for that liability. Therefore, the Bank can properly pursue liability against Pauline and Michael, even though its security against assets of Gilbert's estate has been released.

The Bank's petition contains six counts. Count I prays for judgment against Michael for the $10,000 note that he executed individually on April 28, 1987. Count II prays for foreclosure against the Finney County real estate in Michael's separate name or jointly with his wife pledged as collateral for one of the October 15, 1986, notes. The remaining counts pray for foreclosure on the Finney County real estate in Pauline's separate name and the stock of Krause Plow Corporation, Inc. Although it does not appear that Gilbert owned any interest in the Finney County real estate, the record is not clear on this point.

Therefore, we reverse the court's holding that the Bank was barred from proceeding against Pauline and Michael by the doctrine of election of remedies. We also reverse the court's holding that 59-1303 requires that the Bank release Pauline and Michael from liability on the notes, and we reverse the holding that 59-1303 requires release of security not a part of Gilbert's estate.

The case is remanded with directions that the district court determine whether Gilbert had an ownership interest in any of the assets pledged as collateral other than the McPherson County farmland. In the event it is determined that he did not have an interest, the court should proceed on the Bank's petition against Pauline and Michael on the assets pledged as collateral for the loans.